IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID STEBBINS                                                    PLAINTIFF

v.                                        Civil No. 10-5125

UNIVERSITY OF ARKANSAS, and
G. DAVID GEARHART, in his Official
Capacity as Chancellor of the University
of Arkansas, Fayetteville                                       DEFENDANTS

<u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

Come Defendants, University of Arkansas ("University") and G. David Gearhart, in his

official capacity as Chancellor of the University of Arkansas, Fayetteville ("Chancellor

Gearhart" or "Dr. Gearhart"), and submit this Brief in support of their Motion to Dismiss.  For

convenience, the University and Dr. Gearhart may be collectively referred to as the "Defendants"

throughout this Brief.

**I.**
**<u>SUMMARY OF THE CASE</u>**

A.    <u>Procedural Background</u>

Plaintiff David Stebbins ("Plaintiff" or "Stebbins") initiated this lawsuit against the

University of Arkansas on July 12, 2010.  On August 26, 2010, Plaintiff filed a motion to amend

his initial complaint to include a claim for employment discrimination pursuant to Section 504 of

the Rehabilitation Act.  On August 30, 2010, the Court granted Plaintiff's motion to

amend/correct the Complaint.  On September 10, 2010, the University of Arkansas and the

Office of the Chancellor filed a Motion to Dismiss the Complaint and Amended Complaint along

with a Brief in Support of the Motion to Dismiss.

While Defendants' initial Motion to Dismiss was pending, Plaintiff filed a motion to dismiss on September 16, 2010. In his motion, Plaintiff requested to dismiss the portion of his Complaint against the University of Arkansas that sought "$300,000,000 in lost reputation/profits damages." Additionally, in a separate pleading, Plaintiff filed a response to the initial Motion to Dismiss. In that response, Plaintiff expressly sought to amend his initial Complaint to add Dr. Gearhart solely as an official-capacity defendant in his lawsuit. Plaintiff moved the Court as follows: "The names of the parties current [sic] read 'Stebbins v. University of Arkansas.' I move for them to read 'David Stebbins v. University of Arkansas and David Gearhart, Chancellor of the University of Arkansas.'" (Pl.'s Resp. to Mot. to Dismiss.)

The Court addressed the parties' respective pleadings in an Order entered on October 4, 2010. Specifically, the Court granted Plaintiff's letter motion for the partial dismissal of his claim "for lost reputation/profits." The Court further held that "service of process upon [the University of Arkansas] has not been perfected." The Court granted Plaintiff, at his request, 45 days from the date of the Order to perfect service. The Court further granted Plaintiff's request to amend the Complaint to name Chancellor G. David Gearhart as an official-capacity defendant. The Court then took the remainder of the University's Motion to Dismiss under advisement.

Following this ruling by the Court, Plaintiff filed an Amended Complaint on October 7, 2010, and further moved the Court to order the United States Marshal to serve the Amended Complaint on the University and Chancellor Gearhart. On October 27, 2010, Magistrate Judge Erin Setser entered an Order directing the United States Marshal to serve the Complaint upon the University and Chancellor Gearhart, and further directed the Defendants to respond to the Complaint within 21 days from the date of service. Judge Setser's Order listed the Defendants as the University of Arkansas and the Office of the Chancellor.

Subsequently, on November 15, 2010, the United States Marshal served B. Alan Sugg, President of the University of Arkansas, with the Amended Complaint, as filed by Plaintiff on October 7, 2010. Two days later, on November 17, 2010, the United States Marshal served the Amended Complaint (as filed by Plaintiff on October 7, 2010) on Chancellor Gearhart. The October 7, 2010, Amended Complaint is the only version of the Complaint that Plaintiff has caused to be properly served upon the Defendants. After causing the Amended Complaint filed on October 7, 2010, to be served upon the Defendants by the United States Marshal, Plaintiff filed yet another Motion to Amend Complaint on November 23, 2010. In an Order entered on December 2, 2010, the Court denied Plaintiff's Motion to Amend (Document #18). In a subsequent Order entered on December 14, 2010, the Court granted Defendants' Motion for Extension of Time to Plead and Defendants' Renewed Motion for Extension of Time to Plead and ordered Defendants to respond to the Complaint and the Amended Complaint no later than December 23, 2010.

B.    Summary of Allegations

The Amended Complaint and the Complaint primarily consists of legal conclusions and attempts to assert claims under the Rehabilitation Act and the First Amendment. In his Amended Complaint, Plaintiff alleges as follows:

- That on December 5, 2007, the University banned Plaintiff from campus for "making a threat against them";

- That Plaintiff had scheduled an appointment at the Pat Walker Health Center to get his medication refilled, but he was not seen;

- That Plaintiff then "went to the Center for Conflict Resolution. . . .when [his] Aspergers kicked in," and Plaintiff states that he "told them, that without these medications, there could be another Virginia Tech incident";

3

- That later that same evening, Plaintiff was advised that he was banned from campus pending a judicial hearing and later participated in a hearing regarding this incident;

- That on June 13, 2010, Plaintiff sent Dr. Gearhart an "expletive-filled email" and "demanded that [the Chancellor] retroactively expunge the suspension, officially credit me with having withdrawn due for [sic] confidential reasons, and allow [Plaintiff] to re-enroll immediately for the Fall 2010 semester";

- That on June 15, 2010, a University of Arkansas Police Department ("UAPD") investigator notified Plaintiff that he was "banned from the University of Arkansas campus . . . for a period of one year" due to the "expletive-filled email" sent to the Chancellor; and

- That Plaintiff, "[i]n an attempt to strengthen his case," contacted Defendants' counsel and inquired whether he would receive "equal consideration" for a position with the University, and that Defendants' counsel responded that Plaintiff "may apply to any position."

Based upon the foregoing allegations, Plaintiff seeks the following relief:

- Without specifying against whom such relief is sought, the Complaint seeks injunctive relief to "expunge" all records of Plaintiff's "suspension" and to officially state that Plaintiff left for "classified reasons";

- Without specifying against whom such relief is sought, the Complaint seeks compensatory damages in the amount of "$22,282.40" as the difference in costs incurred by Plaintiff due to his attendance at a private college;

- Without specifying against whom such relief is sought, the Complaint seeks compensatory damages for alleged employment discrimination in the form of "back pay, plus three years of front pay, equal to that of a full-time job that pays $8.00 per hour"; and

- Punitive damages against the University in the amount of $300,000.00.

For the reasons set forth herein, the Complaint should be dismissed.

4

## II.
## <u>LEGAL DISCUSSION</u>

**A. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 8(a)(2) AND 12(b)(6)**

1. <u>The Amended Complaint Fails to Comply with the Pleading Requirements of the Federal Rules of Civil Procedure.</u>

The Amended Complaint should be dismissed because Plaintiff fails to comply with the pleading requirements of the Federal Rules of Civil Procedure. In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court ruled that the pleading standards articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a case involving antitrust issues, apply to all civil cases filed in the federal courts. *Iqbal*, 129 S. Ct. at 1949-52. Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Iqbal*, the Court explained that Rule 8(a)(2) "does not require detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (quotations & citations omitted). The Court rejected pleadings that simply contain "labels and conclusions or a formulaic recitation of the elements of a cause of action" as well as "naked assertions devoid of further factual enhancement." *Id.* (quotations & citations omitted). *Iqbal* clearly repudiates the proposition that motions to dismiss should be denied so long as "some set of facts" could be proved to support a party's claims.

In *Iqbal*, the Court expressly rejected a "possibility" standard and reaffirmed the "plausibility standard" announced in *Twombly* by stating:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

> possibility that a defendant has acted unlawfully. Where a complaint
> pleads facts that are merely consistent with a defendant's liability, it stops
> short of the line between possibility and plausibility of entitlement to
> relief.

*Id.* (quotations & citations omitted). The Court explained that the pleading standards detailed in

*Twombly* rest on two "working principles" as follows:

> First, the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions. Threadbare
> recitals of the elements of a cause of action, supported by mere conclusory
> statements, do not suffice. (Although for the purposes of a motion to
> dismiss we must take all of the factual allegations in the complaint as true,
> we are not bound to accept as true a legal conclusion couched as a factual
> allegation.) Rule 8 marks a notable and generous departure from the
> hyper-technical, code-pleading regime of a prior era, but it does not
> unlock the doors of discovery for a plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a plausible claim for
> relief survives a motion to dismiss. Determining whether a complaint
> states a plausible claim for relief will . . . be a context-specific task that
> requires the reviewing court to draw on its judicial experience and
> common sense. But where the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct, the complaint has
> alleged – but it has not shown – that the pleader is entitled to relief.

*Id.* at 1949-50 (quotations, citations & internal alterations omitted). In applying these principles,

the Court articulated a two-part test for analyzing motions to dismiss.

First, a court should identify all allegations that constitute conclusions because they are

not entitled to the "assumption of truth." *Id.* at 1950. Second, a complaint must contain

sufficient factual allegations that are assumed to be true and the court must determine, based on

its judicial experience and common sense, whether those factual allegations "plausibly give rise

to an entitlement for relief." *Id.* In sum, Rules 8 and 12(b)(6) of the Federal Rules of Civil

Procedure impose definitive pleading standards that must be satisfied for a complaint to survive a

motion to dismiss.

In assessing a motion to dismiss, this Court must accept the factual allegations in the

complaint as true and hold Plaintiff, as a *pro se* litigant, "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*). The liberal pleading standards, however, apply only to Plaintiff's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Despite Plaintiff's status as a *pro se* litigant, he must allege specific facts in his complaint that are sufficient to state a claim and not be merely conclusory allegations. *See Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985). Plaintiff, however, has failed to do so, and the Complaint should be dismissed.

2. Plaintiff's Claims Under the Rehabilitation Act.

In his Amended Complaint, Plaintiff fails to state a claim upon which relief may be granted with regard to his academic standing with the University. *See* Fed. R. Civ. P. 12(b)(6). Even construing Plaintiff's allegations liberally, the Amended Complaint consists of nothing more than *de minimis* legal conclusions asserted as facts. The Court, however, is not bound to accept such legal conclusions as true. *Iqbal*, 129 S.Ct. at 1950. Further, in assessing a *pro se* Complaint, Plaintiff remains responsible to plead "facts with enough specificity to raise a right to relief above the speculative level." *Peace v. Mortgage Elec. Registration Sys., Inc.*, 2010 WL 2384263 at *2 n.3 (E.D. Ark. June 11, 2010) (Webber Wright, J.) (quotations & citations omitted). It is insufficient that the Amended Complaint might "leave open the possibility" that Plaintiff "might later establish some set of undisclosed facts to support recovery." *Id.* (quotations, citations & alterations omitted). Plaintiff is responsible to plead facts that "nudge" his "claims across the line from conceivable to plausible." *Id.* (quotations & citations omitted). None of Plaintiff's claims, even when construed liberally, meets these pleading requirements.

To assert a claim under Section 504 of the Rehabilitation Act, Plaintiff must assert facts establishing:

(1) That he is a qualified individual with a disability;

(2) That he was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by reason of h[is] disability;" and

(3) That any such exclusion, denial of benefits, or other discrimination was because of his disability.

*Meagley v. City of Little Rock*, 2010 WL 3219327 at *3 (E.D. Ark. Aug. 13, 2010) (Marshall, J.)

Plaintiff fails to plead facts to satisfy these elements, and he fails to allege facts with any measure of specificity to establish that he was excluded from participation in, denied benefits, or otherwise discriminated against by reason of disability or that any such exclusion, denial or discrimination was because of his disability. Plaintiff's assertions lack factual grounding that would allow the Court to evaluate the sufficiency of Plaintiff's claims; instead, Plaintiff's allegations are primarily legal conclusions entitled to no weight from the Court. Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff fails to state facts establishing any claims under Section 504 of the Rehabilitation Act.

(a) Plaintiff's Academic Status Allegations Fail to State a Claim Upon Which Relief May Be Granted Pursuant to Rule 12(b)(6).

Plaintiff alleges that on December 5, 2007, he was banned from campus, pending a hearing, because he threatened "another Virginia Tech" incident at the University of Arkansas if he did not receive his medication refills from the Pat Walker Health Center. (Am. Compl. at 1.) Approximately three years later, Plaintiff sought to overturn his "suspension" from the University campus by sending an "expletive-filled email" to Chancellor Gearhart demanding that Dr. Gearhart "retroactively expunge the suspension, officially credit [Plaintiff] with having withdrawn due for [sic] confidential reasons, and allow [Plaintiff] to re-enroll immediately for the Fall 2010 semester." (*Id.* at 2.) In response, Plaintiff further alleges that a UAPD

8

investigator notified Plaintiff that he was not allowed on campus for a period of one year due to the "expletive-filled email." (*Id.*) Plaintiff admits the existence of a "direct threat" defense to the facts that he pleads. (*Id.*)

Plaintiff's allegations fail to cross the line from "conceivable" to "plausible" as required by *Iqbal* and *Twombly*. Taking his allegations as true in the Amended Complaint, Plaintiff admits that he threatened "another Virginia Tech" incident at the University of Arkansas. This incident resulted in his initial temporary suspension being upheld following a judicial hearing. Years later, Plaintiff admits sending an "expletive-filled email" to Chancellor Gearhart demanding his readmission to the University. Consequently, Plaintiff alleges that a UAPD investigator advised him that, due to the "expletive-filled email," Plaintiff was banned from the University campus for a period of one year.

In applying the Court's "judicial experience and common sense" to the Complaint, Plaintiff's allegations do not support Plaintiff's conclusory allegation that he was discriminated against in violation of Section 504 of the Rehabilitation Act. Instead, Plaintiff's limited factual allegations establish that he threatened "another Virginia Tech" incident that resulted in his temporary suspension from campus that was later upheld following a judicial hearing. More than two years later, Plaintiff admits sending an "expletive-filled email" to Chancellor Gearhart demanding readmission to the University and the clearance of his academic record. Plaintiff alleges that a UAPD investigator advised him of a one-year ban from campus due to the "expletive-filled email" – not because of any alleged disability. Based on these facts, Plaintiff asserts the legal conclusion that he suffered discrimination in violation of Section 504 of the Rehabilitation Act. This conclusory allegation is not entitled to any weight from the Court as a matter of law.

In sum, the Amended Complaint includes express allegations establishing that the basis of Plaintiff's suspension from the institution and the subsequent ban from campus for a one-year period resulted from Plaintiff's express threat to commit another "Virginia Tech incident" and due to the "expletive-filled email" sent to Chancellor Gearhart. These allegations do not state facts stating the elements of a claim under the Rehabilitation Act. The Amended Complaint stops "short of the line between possibility and plausibility." Instead, the Amended Complaint contains factual allegations that University administrators acted responsibly and appropriately to a student who threatened "another Virginia Tech" and who later sent an "expletive-filled email" to the Chancellor with strict demands. Accordingly, Plaintiff's claim regarding his academic status at the University should be dismissed as a matter of law for failing to state facts upon which relief may be granted.

 (b) <u>Plaintiff's Employment Discrimination Allegations Fail to State a Claim Upon Which Relief May Be Granted Pursuant to Rule 12(b)(6).</u>

In his second claim under Section 504 of the Rehabilitation Act, Plaintiff alleges employment discrimination against the University. In support of this legal conclusion and "[i]n an attempt to strengthen his case," Plaintiff alleges that he sent the University's attorney an inquiry as to whether Plaintiff would be given "equal consideration" if he applied for a position at the University. (Am. Compl. at 2.) Plaintiff alleges that, in response, the University's attorney advised Plaintiff that he could "apply for any position." (*Id.*) Plaintiff characterized this response as a "dodge," and then demanded "a point blank, yes or no answer." (*Id.*) Plaintiff next alleges: "I further explained to [the University's counsel] that, if he failed to give me a point blank, yes or no answer, then I would assume that the correct answer is 'no.'" (*Id.*) Plaintiff then alleges that University counsel "refused to give a straight up answer" in his second response to Plaintiff's inquiry. (*Id.*) Based upon these allegations, Plaintiff concludes that the University

committed employment discrimination in violation of Section 504 of the Rehabilitation.  Once

again, however, Plaintiff fails to state a claim upon which relief may be granted.

      To assert a *prima facie* case of employment discrimination under Section 504 of the

Rehabilitation Act, Plaintiff must establish the following:

     (1) That he was an individual with a disability;

     (2) That he was "otherwise qualified";

     (3) That he was denied employment for a "program or activity" that receives federal
        financial assistance; and

     (4) That he "was adversely treated solely because of [his] handicap."

*Campbell v. Potter*, 2008 WL 53145 at *7 (E.D. Ark. Jan. 2, 2008) (Eisele, J.)  Here, again,

Plaintiff fails to state facts meeting the elements of a claim for employment discrimination, and

Plaintiff's allegations constitute nothing more than unsupported speculation.  Fed. R. Civ. P.

12(b)(6).

      Plaintiff does not allege that he was an "otherwise qualified" individual with a disability

for employment purposes.  Plaintiff does not allege that the University receives federal financial

assistance.  The Complaint lacks any allegation about a specific position that Plaintiff was not

considered for due to his alleged disability.  Plaintiff does not allege facts identifying any

specific positions for which he applied or sought employment.  Plaintiff does not allege that he

actually applied for a position and was prevented from being considered or interviewing for it

due to any alleged disability.  Once again, Plaintiff's allegations of employment discrimination

do not pass the line from conceivable to plausible based upon an examination of the allegations

in the Amended Complaint.

      Plaintiff admits that University counsel advised Plaintiff that he "may apply to any

position."  The Amended Complaint does not allege that Plaintiff then applied for a position and

failed to obtain employment due to any alleged disability.  More tellingly, the Amended

Complaint establishes that Plaintiff's inquiry was a disingenuous effort to "strengthen [his] case"

against the University by demanding "yes or no" responses to his self-serving questions.  (*See*

*id*.)  In summary, Plaintiff asserts minimal allegations and then draws legal conclusions entitled

to no weight by the Court.  Accordingly, Plaintiff fails to state facts upon which relief may be

granted pursuant to Fed. R. Civ. P. 12(b)(6), and his employment discrimination claim should be

dismissed as a matter of law.

3. <u>Plaintiff's First Amendment Allegations Fail to State a Claim Upon Which Relief May Be Granted Pursuant to Rule 12(b)(6).</u>

Plaintiff asserts that his First Amendment rights were violated because the University

banned Plaintiff from campus for a one-year period in response to Plaintiff's "expletive-filled

email" to Chancellor Gearhart.  Plaintiff views this action as "*increasing* the sanctions [from the

original suspension] against me, simply for sending [Chancellor Gearhart] an expletive-filled

email." (*Id*. (emphasis in original).)  Plaintiff asserts the legal conclusion that the First

Amendment protects his right to send the Chancellor, as a government official, an expletive-

filled email demanding his readmission.

To assert a valid civil rights claim, Plaintiff must allege a deprivation of a federally

protected right and that the person who deprived him of the right acted under color of state law.

*Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Kendrick v. Faust*, 2009 WL 3808539 at *2 (E.D.

Ark. Nov. 12, 2009) (Moody, J).  Plaintiff's Complaint fails because he does not allege facts

establishing that he engaged in any federally protected right.  Moreover, Plaintiff does not allege

facts establishing that Chancellor Gearhart acted under color of law to deny Plaintiff's federally

protected rights.

Plaintiff does not have a constitutional right to be present on the Fayetteville campus of the University of Arkansas. *Widmar v. Vincent*, 454 U.S. 263, 267 n.5 & 278 (1981); *Souders v. Lucero*, 196 F.3d 1040, 1045 (9th Cir. 1999) (holding that an alumnus of Oregon State University lacked a constitutionally protected interest in being present on the institution's campus). Without a constitutionally protected interest, no violation of any such right can occur and give rise to any liability. Moreover, the Amended Complaint alleges that a UAPD investigator – not Chancellor Gearhart – banned Plaintiff from campus. The Amended Complaint is silent with regard to the person responsible for the decision to ban Plaintiff from campus for one year.

Additionally, the Amended Complaint makes clear that Plaintiff was not a current University student or employee at the time of the email, and the Complaint lacks any allegations that Plaintiff engaged in any form of protected speech. The fact that Plaintiff may have written the Chancellor about Plaintiff's personal circumstances as a former student who had been suspended for threatening another "Virginia Tech incident" does not give rise to any federally protected constitutional interests. The Plaintiff simply fails to allege *facts* demonstrating how Chancellor Gearhart violated Plaintiff's First Amendment rights. Plaintiff's conclusory allegations are insufficient to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), and his First Amendment claim should be dismissed.

## B. THE ELEVENTH AMENDMENT BARS PLAINTIFF'S FIRST AMENDMENT CLAIM

1. The Eleventh Amendment Bars the First Amendment Claim For Money Damages Against Chancellor Gearhart And The University.

The Eleventh Amendment to the United States Constitution provides that the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by

citizens or subjects of any foreign state.  U.S. Const. amend. XI.  The Eleventh Amendment presents a jurisdictional bar to any suit that is, in actuality, directed against the State, regardless of whether the action is nominally instituted against the State, a state agency or instrumentality, or a state official.  *Edelman v. Jordan*, 415 U.S. 651 (1974); *Florida Dep't of State v. Treasure Salvors*, 458 U.S. 670 (1982); *Alabama v. Pugh*, 438 U.S. 781 (1978).  States and their agencies "retain their immunity against *all* suits in federal court" whether the claims are for damages or prospective equitable relief.  *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (emphasis added).  Thus, the Eleventh Amendment bars a suit against state officials or agencies when the State is the real, substantial party in interest.

In this case, Plaintiff appears to assert that Chancellor Gearhart violated Plaintiff's First Amendment rights.  Plaintiff contends that a UAPD investigator advised him that Plaintiff would not be permitted to come on campus for a period of one year due to the content of a "the expletive-filled email" directed at Chancellor Gearhart.  (Am. Compl. at 2.)  Again, the Amended Complaint does not assert that Chancellor Gearhart ordered UAPD to prohibit Plaintiff from coming onto campus.  In any event, Plaintiff's First Amendment claim is filed against Dr. Gearhart solely in his official-capacity as Chancellor of the University.

In the context of Section 1983 civil rights claims, the Eighth Circuit previously explained: "Because section 1983 liability exposes public servants to civil liability and damages, we have held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants." *Johnson*, 172 F.3d at 535. "However, we do not require that personal capacity claims be clearly-pleaded simply to ensure adequate notice to defendants.  We also strictly enforce this pleading requirement because the Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and

their employees." *Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997) (quoting *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)) (alteration & internal quotations omitted). Therefore, "absent a clear statement that officials are being sued in their personal capacities," a court "interpret[s] the complaint as including only official-capacity claims." *Murphy*, 127 F.3d at 754 (quoting *Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 619 (8th Cir. 1995)) (internal quotations omitted); *see also Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("A suit against a public official in his individual capacity requires that the public official be named in his personal capacity as an individual. If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity.")

The Amended Complaint fails to name any University officials in their individual capacities as defendants. By failing to name any individual defendants, there are no individual-capacity claims in this action. *Artis*, 161 F.3d at 1182 (8th Cir. 1998) ("A suit against a public official in his individual capacity requires that the public official be named in his personal capacity as an individual. If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity.")

Plaintiff's First Amendment money damages claim, whether directed against Chancellor Gearhart or the University, is barred by the Eleventh Amendment. "Suits against state officials in their official capacity . . . [are] treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66-67 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties.") (quotations & citation omitted); *Quern v. Jordan*, 440 U.S. 332, 338-40 (1979).

The Eleventh Amendment "prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities because such lawsuits are essentially 'for the recovery of money from the state.'" *Treleven v. University of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996) (quoting *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464 (1945)). Plaintiff's First Amendment claim, therefore, is barred by the Eleventh Amendment. *Edelman v. Jordan*, 415 U.S. 651 (1974).

 2. Chancellor Gearhart and the University Are Not "Persons" Under Section 1983.

Chancellor Gearhart, a state officer, is not "person" against whom a suit can be sustained for money damages. *See Will*, 491 U.S. at 71; *Hafer*, 502 U.S. at 27 ("State officers sued for damages in their official capacity are not 'persons' [under Section 1983] for purposes of [a] suit because they assume the identity of the government that employs them.") Similarly, this is true for the University as well. *Id.*

 3. Liability Against the University and Chancellor Gearhart May Not Be Premised On A Theory Of *Respondeat Superior.*

Plaintiff may not premise any liability against the University or Chancellor Gearhart based upon a theory of *respondeat superior* concerning any alleged actions or inactions by various University employees. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978); *Artis*, 161 F.3d at 1181 ("A governmental entity is not liable under Section 1983 based on actions of its employees under a theory of respondeat superior."). Plaintiff, however, alleges that Chancellor Gearhart was responsible for the actions of the UAPD investigator. Accordingly, Plaintiff's First Amendment claim against Chancellor Gearhart must be dismissed. To the extent that Plaintiff seeks damages against the University for any alleged violation of the First Amendment, such claims are barred for similar reasons.

## C.    PLAINTIFF'S REQUEST FOR EQUITABLE RELIEF IS BARRED BY THE ELEVENTH AMENDMENT AND SHOULD BE DISMISSED

Although actions for injunctive relief may generally be maintained against an official-capacity defendant under *Ex Parte Young*, 209 U.S. 123 (1908), no basis exists for permitting Plaintiff's action to proceed in this case. The Supreme Court has explained that *Ex Parte Young* is not automatically applied in every case:

> To interpret *Young* to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer . . . would be to adhere to an empty formalism and to undermine the principle, reaffirmed just last Term in *Seminole Tribe*, that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction. The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleadings. Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction.

*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997) (citations omitted). "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157.

In this case, although Chancellor Gearhart serves as the top administrative official at the University of Arkansas, Fayetteville, Plaintiff has not expressly sought injunctive relief against him. Specifically, the Amended Complaint's prayer for relief does not state whether injunctive relief is being sought from Chancellor Gearhart, the University or both Defendants. As a matter of law, the Eleventh Amendment bars such relief as to the University. Even if the Court liberally construes the Amended Complaint to direct the request for such relief against Chancellor

Gearhart, the Amended Complaint remains defective because of a lack of any facts establishing a causal connection between Dr. Gearhart and the relief sought.

The fact that Chancellor Gearhart is the top administrative official at the Fayetteville campus is insufficient to support Plaintiff's request for injunctive relief. The Amended Complaint lacks factual allegations relating to the individuals and/or institutional bodies responsible for deciding and implementing Plaintiff's suspension from the University and/or the individual University officials responsible for maintaining institutional records. Seeking injunctive relief against Chancellor Gearhart "to expunge all records related to [Plaintiff's] suspension" is nothing more than a request for such relief against the Office of the Chancellor and thus the University. This request, therefore, is barred by the Eleventh Amendment.

For example, in *Fitts v. McGhee*, 172 U.S. 516 (1899), a plaintiff challenged an act regulating bridge toll rates by suing a governor and attorney general for injunctive relief. *Id.* at 518. Ruling for the defendants, the Supreme Court held that neither the governor nor the attorney general "appears to have been charged by law with any special duty in connection with the act." *Id.* at 529. The fact that Chancellor Gearhart may have general administrative responsibility for the Fayetteville campus is insufficient to substantiate the connection required under *Young*. *See Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (governor's "general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute"); *1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993) (same); *Weinstein v. Edgar*, 826 F. Supp. 1165, 1167 (N.D. Ill. 1993) (same). For this reason alone, Plaintiff's claim for injunctive relief must fail.

Additionally, Plaintiff's claim for injunctive relief fails because, as a matter of law, no basis in law exists for the underlying claim. The Supreme Court previously stated that "'in any §

18

1983 action the initial inquiry must focus on whether the two essential elements to a § 1983

claim are present: (1) whether the conduct complained of was committed by a person acting

under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or

immunities secured by the Constitution or laws of the United States.'" *DuBose v. Kelly*, 187

F.3d 999, 1002 (8th Cir. 1999) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled

on other grounds sub nom. Daniels v. Williams*, 474 U.S. 327 (1986)). Here, Plaintiff is unable

to satisfy either requirement for obtaining the requested injunctive relief.

In the context of a civil rights claim, the Sixth Circuit has recognized that a complaint

must assert more than bare legal conclusions to state a claim:

> [T]he standard of review of a dismissal of a complaint under Fed.
> R. Civ. P. 12(b)(6) is liberal. . . . It is plain that, although liberal,
> the standard does require that a plaintiff plead more than bare legal
> conclusions.  In practice, a . . . complaint must contain either direct
> or inferential allegations respecting all the material elements to
> sustain a recovery under *some* viable legal theory.  This court has
> held, in the context of a civil rights claim, that conclusory
> allegations of unconstitutional conduct with specific factual
> allegations fails to state a claim under section 1983.  Some factual
> basis for such claims must be set forth in the pleadings.

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quotations & citations

omitted) (second alteration in original).  In this regard, Plaintiff's claim for injunctive relief is

legally deficient.  Moreover, the claim fails because Plaintiff's basis for equitable relief is not

grounded on a constitutional right and thus he fails to assert a "viable legal theory."

As stated, Plaintiff lacks any constitutional right to be on the Fayetteville campus, and the

Complaint fails to identify any constitutionally protected interest, including, without limitation,

expunging "all records relating to his suspension."  (Am. Compl. at 2-3.)  The Amended

Complaint further fails to state facts identifying how Chancellor Gearhart violated any of

Plaintiff's constitutionally protected interests.  The official-capacity claim against Chancellor

19

Gearhart for injunctive relief should be dismissed for failing to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

### D.     PLAINTIFF MAY NOT RECOVER PUNITIVE DAMAGES AS A MATTER OF LAW

Plaintiff seeks punitive damages in the amount of $300,000.00 with regard to his employment discrimination claim against the University. (Am. Compl. at 3.) Punitive damages against the University or the Chancellor in his official-capacity, however, are statutorily barred. 42 U.S.C. § 1981a(b)(1). Specifically, the statute provides that "[a] complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Id.* (emphasis added.) Accordingly, Plaintiff's request for punitive damages is barred and should be dismissed as a matter of law

### III.
### CONCLUSION

For all of the foregoing reasons, Defendants, University of Arkansas and Chancellor G. David Gearhart, respectfully request that the Complaint and the Amended Complaint be dismissed with prejudice, that the University be awarded its costs incurred, and that the Court award all other relief which it deems just and proper.

Respectfully submitted,

By: /s/ T. Scott Varady
T. SCOTT VARADY
Associate General Counsel
Arkansas Bar No. 93172
E-mail: svarady@uark.edu

WILLIAM R. KINCAID
Associate General Counsel
Ark. Bar No. 93125
E-mail: wkincaid@uark.edu
TAMLA J. LEWIS
Associate General Counsel
Ark. Bar No. 2005237
E-mail: tjlewis@uark.edu
University of Arkansas
421 Administration Building
Fayetteville, AR 72701
Phone: 479-575-5401

      and

JEFFREY A. BELL
Senior Associate General Counsel
Arkansas Bar No. 77009
University of Arkansas
2404 N. University Avenue
Little Rock, AR  72207
(501) 686-2520
E-mail: jbell@uasys.edu

COUNSEL FOR THE UNIVERSITY OF
ARKANSAS AND CHANCELLOR
G. DAVID GEARHART

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 23rd day of December, 2010, I caused a copy of foregoing Brief in Support of Motion to Dismiss, to be served upon Plaintiff David Stebbins, via First-Class U.S. Mail at the following addresses:

> David Stebbins
> 1407 N. Spring Rd.
> Apt. #5
> Harrison, AR  72601

>   /s/ T. Scott Varady   
> T. Scott Varady
> Associate General Counsel

22