

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**DAVID STEBBINS**                                                      **PLAINTIFF**

vs.

**WAL-MART STORES, INC.**                                               **DEFENDANTS**

### BRIEF IN SUPPORT OF MOTION

Comes now Plaintiff David Stebbins, who submits the following brief in support of the enclosed motion to confirm an arbitration award.

### Facts

I contend the following facts:

On January 27, 2011, I sent the defendants a formal offer for a contract. See Exhibit A. As you can see from Exhibit A, the email I sent to them was actually a link to a Youtube video. This video is "unlisted." What that means is, you cannot find the video via normal browsing; instead, only one who has the actual link can view the video. I designed it that way so that the UA, and only the UA, would actually see the video. However, as you can clearly see from the nature of that email, I was clearly intending to ask them to view that video. Upon actually doing so, they would see the contract that I was attempting to hold them to.

I believe that the University of Arkansas is most likely to claim that they never received the contract offer. However, I believe that the odds of that being the case are one in a million. It is not even so much as a reasonable doubt, let alone preponderance of the evidence.

I do not expect that you are completely computer literate, but I assume you at least know the basics about computers. One of the first things you are taught in a computer course is that, computers do not make mistakes; they do exactly what they are told; humans have to make

mistakes for them.  Therefore, the only reasonably possible way that the contract offer never reached their inbox was if I made a mistake in typing the email addresses.  However, that did not happen.  As you can see, their email addresses are perfectly typed.  If the defendants disagree to that assertion, they must say so in their suggestion in opposition of this motion.

       Therefore, if they want to claim that the computer made a mistake, the odds of that being true are very unlikely.  Think about it:  Pretend, for a minute, that you are on a jury, in state court, in a murder trial.  The defendant is accused, not of actually killing the victim, himself, but with hiring a hitman to do it for him.  To prove it, the prosecution introduces an email conversation where the specified hit was negotiated.  The defendant admits to owning the email address used in that conversation, and the IP address belongs to a computer that he owned at the time the email conversation took place.

       At that point, would you entertain the mere possibility of a computer malfunction as a reasonable doubt, and acquit the defendant accordingly?  Granted, it is possible that someone else hacked his computer and email account, and attempted to frame the defendant for the crime, and *that* might be a reasonable doubt, but, at this time, we are considering the possibility of a computer malfunction.

       If you would entertain the possibility of a computer malfunction as a reasonable doubt, without any genuine proof to back up that claim, then how can it possibly refute a plaintiff's preponderance of the evidence?  Since this is a bench trial, you are the trier of fact, so you must actually justify your finding of fact, like this.

       Anyway, moving on.

       The contract I sent them in Exhibit A states, among other things, the following:

1. Contacting me in any way constitutes their acceptance.

2. Allowing me to contact them, for any reason, without ceasing communications with me immediately, also constitutes their acceptance.

3. We agree to settle all legal disputes, not just those related to that contract (including the discrimination suit that we were currently litigating), via binding arbitration, using either www.net-arb.com, the American Arbitration Association, or the National Arbitration Forum.

4. If they do not accept my offer to arbitrate within 24 hours [after they receive it], then I automatically win the relief requested, regardless of the merits of the case.

See Exhibit B for the text of that contract.

I sent this email with a secondary email address. I normally use the email address of stebbinsd@yahoo.com, but I also use stebbinsd@gmail.com, on occasion. The UA knew about this. On two separate occasions, I contacted UA employees, using that email address, and explained that it is simply a secondary email address. Once, I did it to Investigator Marvin Vance Rice. See Exhibit C. However, once before then, I used it to contact Monica Holland, who works in the Student Affairs office of the UA. Not only did she receive that email, but she *responded to it*! See Exhibit D.

On the date of February 4, 2011, after giving the UA ample time to actually *read* the email, and watch the video associated with it, I contacted Varady's office regarding an issue I had already sent Varady in an email. Varady took my call. His secretary should have told him what I was calling him about. She knew what I was calling him about.

Simply by nature of the secretary not hanging up on me, they became bound by the contract. However, when Varady himself, who personally received a copy of that email, chose to take my call, then he ran out of excuses.

As for exhibits, I am a little short on things I can actually mail in. However, I can provide an exhibit in video format. If you go this link, you will find another unlisted youtube video. This video shows me calling Varady's office using a computer-based phone service called Skype, and Varady taking my call. I present for the court's review...

Exhibit E:   http://www.youtube.com/watch?v=NbBevxe3-rQ

Later that day, I sent Varady an email, containing an invitation to arbitrate. He was now legally required to accept it, otherwise the UA lost, automatically. See exhibit F

Later that day, however, he responded, not with the accepted arbitration invitation, but stating that he was not *going* to accept it! See Exhibit G.

It is now well past the 24 hour time limit. I now wish to invoke the forfeit victory clause.

As you can see from Exhibits H and I, the relief I was seeking was thus:

1. $300,000.00, with 10% APR compounding monthly.
2. $50,000,000.00, with the outstanding balance increasing tenfold each day, even after the arbitration award was confirmed.
3. An injunction, allowing me to re-enroll in the University of Arkansas' studies, immediately, and all previous disciplinary records were completely expunged.

Wherefore, I respectfully pray that you confirm that forfeit victory.

## Law

May it please the court, that I hereby make the following arguments of law.

Before I continue, allow me to point out that I will provide end note citations, much like Wikipedia, when citing my legal authority. Whenever you say [1] immediately follow a sentence, look to the corresponding [1] in the Table of Authorities. As you can see from that excerpt in the table of authorities, I am citing the case of *Feldman v. Google, Inc.* as persuasive

precedent in support of that particular point of law.

Now, on to the actual legal arguments.

First, let us cover the basics. As you are well aware, there are seven elements of a contract. They are...

1. Offer
2. Acceptence
3. Capability to enter into a contract.
4. Consideration
5. Intent to be legally bound
6. Meeting of the minds
7. Legality (i.e. hitman contracts are not valid or enforceable).

I have already established offer in the "facts" section of the email. Furthermore, I do not think that "capability" is in any dispute. Therefore, I now move on to why I believe the actions that they performed that signified their acceptance should be treated as a signal of acceptance, as a matter of law.

### It is the same legal concept as a browse-wrap agreement.

I am sure you are familiar with the difference between browse wrap agreements and click wrap agreements. Click wrap agreements are upheld and enforced consistently – as consistently as any other contract.[1][2][3][4][5]

However, browse-wrap agreements are significantly more controversial. They are often well hidden, which makes it difficult to prove that the other party actually *saw* the contract.

However, that is typically attributable to the element of acceptance. Once the proponents of the browse-wrap agreement can prove, by preponderance of the evidence, that the browse-

wrap agreement was seen, or, at the very least, was clearly visible, courts are generally willing to enforce them.[6][7]

This proves that the UA accepted the contract. As I have already stated, before, the odds that they never received the email are not even a reasonable doubt, let alone preponderance of the evidence. Therefore, as the two case laws I have cited demonstrate, allowing me to call them, subtle as that action may be, constitutes acceptance, as long as any reasonable person would have know that it would constitute their acceptance.

Therefore, the court should rule that their actions legally bound the Defendants to this contract, which, among other things, contained an arbitration agreement and a forfeit victory clause.

I now move on to the fourth element of a contract: Consideration.

### We must both refer all legal disputes to binding arbitration.

This is consideration in and of itself, especially given the fact that, unlike my contract with Wal-Mart, this arbitration agreement contains mutuality of obligation! I am a little short in terms of actual law to cite that states this, unambiguously. Instead, I ask that the court use its common sense. We both save time and money by referring all legal disputes to arbitration. That is clearly more than a peppercorn of consideration. In fact, the consideration is so blatant, it can often stand alone as its own contract! Specifically, I am talking about when parties in a case agree to arbitrate that one case, on a case-by-case basis.

Therefore, this contract contains sufficient consideration, up to the point that the court is authorized to decide.

I now move on to the next element: Meeting of the minds.

### There are objective indicators of assent in this case.

Ever since 1995, in Arkansas, "meeting of the minds," aka a mutual understanding of all the terms, was established, not by each party's subjective understanding of the terms, but by "objective indicators of agreement."[8]

To that end, it appears that "meeting of the minds" is neigh indistinguishable from "acceptance," which I have already established. There is nothing else to add in this case.

I now move on to proving that there was an attempt to be legally bound.

### The contract unambiguously specified an intent to be legally bound.

No reasonable person, upon actually *reading* the contract, would think that there is no intent to be legally bound. That is simply absurd. What part of "By performing any of the acceptance methods listed below, you hereby agree to be bound by the following terms" would a reasonable person not understand?

Simply put, I have established an intent to be legally bound. I now move on to the legality of the contract.

### It is legal to refer legal disputes to binding arbitration.

Remember, the arbitrator must decide the legality of a contract, unless the arbitration clause itself is being challenged.[9]

Therefore, unless you want to ruse that it is illegal to refer legal disputes to arbitration, then the contract as a whole – up to the point that the court is authorized to decide – is legal and binding.

I now move onto what I think will be the University of Arkansas' most likely absolute defense (claiming that they never received the contract offer is denying an element of my prima facie; it is not a defense): They are immune under the Eleventh Amendment.

### An arbitration agreement constitutes a waiver of sovereign immunity.

The Supreme Court has ruled, without ambiguity, that agreeing to arbitrate legal disputes constitutes a voluntary waiver of sovereign immunity.[10]  Granted, the case that I cited concerns an Indian tribe, but the court's flow of logic is clearly meant to be taken as a waiver of sovereign immunity, across the board.  Think about it:  Their logic was that they agreed to use a particular arbitration forum to decide their legal disputes.  The rules of that arbitration forum explicitly state that the arbitration award may be confirmed in a court of otherwise competent jurisdiction.  Therefore, the Supreme Court ruled that agreeing to arbitration constituted a consent to being sued.  It would be completely senseless to rule that the Supreme Court only intended to rule that it only applied to Indian tribes.

Simply put, there is no excuse.  They are not getting out of this one.  Not this time.

Wherefore, I respectfully pray that you confirm the arbitration award, obtained via the forfeit victory clause, as I originally requested it in the arbitration invitation, award costs incurred, and other relief as the court finds appropriate.  It is so humbly requested, on this 12th day of February, 2011.

/s/ David Stebbins
David Stebbins
1407 N Spring Rd,
APT #5
Harrison, AR 72601
Phone:  870-204-6024
stebbinsd@yahoo.com

## TABLE OF AUTHORITIES

[1] *Feldman v. Google, Inc.*, 513 F.Supp.2d 229 (E.D.Pa. 2007)

[2] *In re RealNetworks, Inc. Privacy Litigation*, No. No. 00-1366, 2000 WL 631341 (D. Ill. May 8, 2000)

[3] *Hotmail Corp. v. Van$ Money Pie*, No. 98-20064, 1998 WL 388389 (N.D. Cal. Apr. 16, 1998)

[4] *I. Lan Sys., Inc. v. Netscout Serv. Level Corp.*, 183 F. Supp. 2d 328, 336 (D. Mass. 2002)

[5] *Bragg v. Linden Research, Inc.*, 487 F.Supp.2d 593 (E.D. Pa. 2007)

[6] *Ticketmaster Corp. v. Tickets.com, Inc.*, 2000 U.S. Dist. Lexis 4553 (C.D. Ca., March 27, 2000)

[7] *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 835 N.E.2d 113 (Ill App 5 Dist., August 12, 2005) app. denied, 217 Ill. 2d 601, 844 N.E.2d 965 (Ill. 2006)

[8] *Thurman v. Thurman*, 50 Ark. App. 93, 900 S.W.2d 221 (1995)

[9] *Buckeye Check Cashing Inc. v. Cardegna* (546 U.S. 440)

[10] *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411 (2001)

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**DAVID STEBBINS**                                                                   **PLAINTIFF**

vs.                                                  10-5125

**UNIVERISTY OF ARKANSAS & DAVID GEARHART**            **DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of
    Plaintiff's Motion to Confirm Arbitration Award
and
    Plaintiff's Brief in Support of Motion
was served on

T. Scott Varady
421 Administration Building
University of Arkansas
Fayetteville, AR 72701
Phone: (479) 575-5401
Fax: 479-5046
svarady@uark.edu
Attorney for: Defendants

by mailing a copy to his office address at 421 Administration Building, University of Arkansas, Fayetteville, AR 72701, on the 12th day of February, 2011.

                                                                          David Stebbins
                                                                      1407 N Spring Rd,
                                                                             APT #5
                                                             Harrison, AR 72601
                                                       Phone: 870-204-6024
                                                      stebbinsd@yahoo.com

David Stebbins
1407 N Spring Rd,
APT #5
Harrison, AR 72601

U.S.
35
Roo
Faye