**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**DAVID STEBBINS**                                                                    **PLAINTIFF**

v.                                                     **Civil NO. 10-5125**

**UNIVERSITY OF ARKANSAS;**
**OFFICE OF THE CHANCELLOR**                                         **DEFENDANT**

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S
## MOTION TO COMPEL DISCOVERY

Comes Defendant, University of Arkansas, acting through its undersigned

counsel, and submits this Brief in Opposition to Plaintiff's Motion to Compel Discovery.

### I.    Introduction

Plaintiff's Motion to Compel should be denied because it is based upon the

erroneous premise that Plaintiff has filed a valid discovery request that complies with the

Federal Rules of Civil Procedure. Plaintiff may not invoke the Federal Rules of Civil

Procedure to compel compliance with his unilateral demands that, regardless of how

Plaintiff may attempt to characterize such demands, are not based upon the rules. The

Motion to Compel is unsupported by the Federal Rules of Civil Procedure. Specifically,

the initial disclosure provisions of Rule 26 as well as Rule 33 lack any requirement for a

litigant to submit a list of objections to the information provided by the disclosing party.

Accordingly, Defendant is not required to file an objection to a demand that falls outside

the procedural rules or to waste this Court's time by seeking its intervention in response

to a nonsensical demand issued by Plaintiff. The Motion to Compel, therefore, should be

denied.

1

II.    **Defendant Has Responded to Plaintiff's Initial Requests for Admissions, Interrogatories and Production Requests.**

As background, Defendant has responded timely to Plaintiff's discovery requests consistent with the Federal Rules of Civil Procedure. The following table identifies Plaintiff's various discovery requests and the date Defendant served its responses.

| DOCUMENT | DATE REC'D BY DEF. VIA U.S. MAIL | DEF.'S RESPONSE | DATE SERVED VIA U.S. MAIL |
|---|---|---|---|
| Plaintiff's Requests for Admissions (Ex. A.) | Feb. 7, 2012 | Defendant's Responses to Plaintiff's Requests for Admissions (Ex. B.) | March 6, 2012 |
| Plaintiff's "Interrogatory" Nos. 1-3 with No. 4 Left Blank and "Request for Production" Nos. 1-2 (Ex. C.) | Feb. 7, 2012 | Defendant's Responses to Plaintiff's Interrogatories and Requests for Production of Documents (Ex. D.) | March 7, 2012 |

Each of the foregoing discovery documents is attached hereto and incorporated herein by reference.

III.    **Plaintiff's Initial Disclosures and Plaintiff's Unilateral Demand.**

On February 27, 2012, Defendant received Plaintiff's "Initial Disclosures." As part of his Initial Disclosures, Plaintiff included the following unilateral demand at the end of his disclosures:

> Provide an exhaustive, thorough, and specific set of objections you have to the factual accuracy of the content of A) all initial disclosures, responses to your discovery requests, and affidavits filed by Plaintiff and/or his witnesses. B) all information you collect when acting on my granting of a request to permit inspection.

A copy of Plaintiff's Initial Disclosures are attached as Exhibit E and incorporated herein by reference. This unilateral demand serves as the basis for the Motion to Compel.

As an initial matter, Plaintiff's demand is part of his Initial Disclosures. The demand is not an interrogatory, in form or substance, under Rule 33 of the Federal Rules of Civil Procedure, and it does not make any sense. In the first component of Plaintiff's unilateral demand, Plaintiff commands Defendant to: "Provide an exhaustive, thorough, and specific set of objections you have to the factual accuracy of the content of A) all initial disclosures, responses to your discovery requests, and affidavits filed by Plaintiff and/or his witnesses." Plaintiff's unilateral demand reflects a fundamental misunderstanding of the purpose of Rule 26 of the Federal Rules of Civil Procedure.

Rule 26 and Rule 33 of the Federal Rules of Civil Procedure do not grant Plaintiff the authority to demand a party to submit a list of objections to a party's initial disclosures. In this instance, for example, Defendant lacks any knowledge whether Plaintiff intends to call the witnesses to testify at trial as listed in his Initial Disclosures. At the time Plaintiff served his Initial Disclosures, Plaintiff had not provided any discovery responses to Defendant to which objections could have been lodged. Similarly, Defendant lacks any knowledge of any "affidavits filed by Plaintiff and/or his witnesses." In short, there are no affidavits to object to for any reason.

Similarly, Plaintiff's command to "[p]rovide an exhaustive, thorough, and specific set of objections you have to the factual accuracy of the content of . . . . all information you collect when acting on my granting of a request to permit inspection" makes no sense. Again, this demand appears to reflect a misunderstanding of the Federal Rules of Civil Procedure. In the judgment of Defendant's counsel, Plaintiff's demands were improper and inconsistent with the Initial Disclosure requirements of Rule 26 and did not

require any further action or necessitate seeking the Court's intervention for any reason. For all of these reasons, the Motion to Compel should be denied.

To the extent that the Court deems Plaintiff's demand to be an "interrogatory" within the meaning of Rule 33 of the Federal Rules of Civil Procedure, Defendant believes good cause exists for the Court to grant Defendant additional time to respond to the demand and to present any objections permitted by the Federal Rules of Civil Procedure. The label "Interrogatories" Plaintiff placed above his demand at the end of his Initial Disclosures is not the dispositive inquiry in this matter. As a substantive matter and in context, Plaintiff demanded a list of objections to things that had not yet happened in this case as well as a list of detailed objections to the information apparently contained in *Plaintiff's* Initial Disclosures. Plaintiff's demand, however, is inconsistent with Rule 26 of the Federal Rules of Civil Procedure.

### IV. Plaintiff's Pending Discovery Requests.

Plaintiff has continued to file additional discovery in this case. Following the receipt of Defendant's discovery responses (including approximately 400 pages of records) referenced in Section II, *supra*, Plaintiff recently served two more sets of interrogatories, another set of production requests, and another set of requests for admissions that Defendant received on March 12, 2012. Defendant is currently in the process of preparing its responses to Plaintiff's pending discovery requests. Plaintiff is free to conduct discovery consistent with the rules of the Federal Rules of Civil Procedure, but Plaintiff is not free to unilaterally impose obligations that do not exist on an opposing party and then compel compliance with non-existent requirements.

IV.     **Conclusion.**

For all of the foregoing reasons, Plaintiff's Motion to Compel should be denied,

and the Court should award all relief the Court deems just and proper to Defendant.  In

the event the Court deems Plaintiff's unilateral demand for a listing of objections to

Plaintiff's Initial Disclosures to constitute an interrogatory within the meaning of Rule

33, Defendant believes that the confusing nature of Plaintiff's demands warrants granting

Defendant additional time to respond, including, but not limited to, raising all objections

permitted under the Federal Rules of Civil Procedure.

Respectfully submitted,


By: /s/ T. Scott Varady
T. SCOTT VARADY
Arkansas Bar No. 93172
WILLIAM R. KINCAID
Ark. Bar No. 93125
Associate General Counsel
University of Arkansas
421 Administration Building
Fayetteville, AR 72701
Phone: 479-575-5401
E-mail: svarady@uark.edu

and

JEFFREY A. BELL
Arkansas Bar No. 77009
Senior Associate General Counsel
University of Arkansas
2404 N. University Avenue
Little Rock, AR  72207
(501) 686-2520
E-mail: jbell@uasys.edu

COUNSEL FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I certify that on April 2, 2012, I caused a copy of Defendant's Brief in Opposition to Plaintiff's Motion to Compel to be served upon Plaintiff David Stebbins via First-Class U.S. Mail at the following address:

David Stebbins
123 W. Ridge, Apt. D
Harrison, AR 72601

<u>/s/ T. Scott Varady</u>
T. Scott Varady
Associate General Counsel

6

Record
FEB 07 2012

United States District Court for the
Western District of Arkansas

David Stebbins,                          Plaintiff

vs.                    Case No. 10-5125

University of Arkansas              Defendant

## REQUEST FOR ADMISSIONS

1. I was enrolled in your school as a student between the months of August and December 2007.

2. While enrolled, I registered my disability with the Center for Educational Access, or CEA for short.

3. The CEA accepted that I have Asperger Syndrome and enrolled me in their ADA accomodations program.

4. The CEA provides the same accomodations to all disabled students, regardless of individual custom need.

5. The CEA accepted that Asperger Syndrome is a neurological disability that makes me say things I don't mean.

6. You made no attempts whatsoever, to accomodate my disability, beyond the universal accomodations that are offered without qualification to all disabled students.

7. I accepted two accomodations: Priority seating in class and priority class registration.

8. Both accomodations have absolutely nothing to do with Asperger Syndrome, as the CEA defined it.

9. On December 5, 2007, I was thrown off campus for making what you perceived to be a terroristic threat

EXHIBIT
A

10. You made no attempts, whatsoever, to give my Asperger Syndrome any kind of individualized assessment, to be sure if Asperger Syndrome makes me a violent person.

11. On January 6, 2008, I had a hearing to remove the suspension spoken of in admission #9.

12. During said hearing, I explained your legal requirement to accommodate my disability, but you ignored my explanation and upheld the suspension.

13. In June of 2010, I demanded to be re-admitted to the UA. You responded to this request by banning me from UA campus altogether. This lawsuit ensued.
      You have 30 days to respond to this request for admissions.

David Stebbins
5800 Law Dr.
Harrison, AR 72601

U.S. District Court for the
Western District of Arkansas

David Stebbins                    Plaintiff

vs            Case No. 10-5125

University of Arkansas            Defendant

REQUEST FOR ADMISSIONS

4. There is mutual hatred between us.

5. Attending a different college would probably be an easier remedy than being forcibly reinstated into your clientel.

16. Because of your actions, my student loan debt has gone from $5,000 to nearly $50,000 as I wandered from school to school to try to find myself.

17. Because you deprived me of my inability to pay my student loans, I defaulted on them, and my credit plummeted.

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID STEBBINS                                           PLAINTIFF

v.                              CIVIL NO. 10-5125

UNIVERSITY OF ARKANSAS;
OFFICE OF THE CHANCELLOR                    DEFENDANT

### DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS

Comes Defendant, University of Arkansas ("University" or "Defendant"), acting through

its undersigned counsel, pursuant to Rule 36 of the Federal Rules of Civil Procedure and submits

the following Responses to Plaintiff's Requests for Admissions as follows.

1.      REQUEST FOR ADMISSION NO. 1: I was enrolled in your school as a student

between the months of August and December 2007.

RESPONSE TO REQUEST FOR ADMISSION NO. 1: Defendant admits that

Plaintiff David Stebbins ("Plaintiff") was enrolled at the University during the fall, 2007

semester until he was suspended on an interim basis on December 5, 2007.

2.      REQUEST FOR ADMISSION NO. 2: While enrolled, I registered my disability

with the Center for Educational Access, or CEA for short.

RESPONSE TO REQUEST FOR ADMISSION NO. 2: Defendant admits that

Plaintiff registered with the institution's Center for Educational Access ("CEA") during the fall,

2007 semester. Defendant further specifies that the only disability identified by Plaintiff in his

registration request on August 14, 2007, was Asperger's Syndrome.

3.      REQUEST FOR ADMISSION NO. 3: The CEA accepted that I have Asperger

Syndrome and enrolled me in their ADA accommodations program.

1



RESPONSE TO REQUEST FOR ADMISSION NO. 3: Based upon a review of Plaintiff's medical documentation received by the CEA on September 24, 2007, the CEA agreed that Plaintiff was eligible for accommodations based on his Asperger's Syndrome disability. Defendant denies Plaintiff's characterization that he was "enrolled" into an "ADA accommodations program" because no such generic program exists. At his initial registration meeting on August 14, 2007, Plaintiff did not request any accommodations. During the course of the semester, Defendant provided accommodations as requested and based upon an individualized assessment of the functional limitations of Plaintiff's disability (Asperger's Syndrome) after receiving Plaintiff's required medical documentation.

4.    REQUEST FOR ADMISSION NO. 4: The CEA provides the same accommodations to all disabled students, regardless of individual custom need.

RESPONSE TO REQUEST FOR ADMISSION NO. 4: Defendant denies that the CEA "provides the same accommodations to all disabled students, regardless of individual custom need." The CEA conducts an individualized assessment of each student's disability based upon his or her medical documentation and the functional limitations imposed by the disability. As part of the interactive process, the CEA meets with the student to determine what reasonable accommodations are being requested and whether such accommodations are reasonable. Based on this process, the CEA offers the student reasonable accommodations, but the individual is not required to utilize any reasonable accommodation offered by the University. If a student believes that he or she has been denied a reasonable accommodation, the University maintains a policy (UA 504/ADA Student Grievance Procedure) permitting the student to challenge any such denial.

5.    REQUEST FOR ADMISSION NO. 5: The CEA accepted that Asperger Syndrome is a neurological disability that makes me say things I don't mean.

RESPONSE TO REQUEST FOR ADMISSION NO. 5: Defendant only admits that Plaintiff has Asperger's Syndrome. Defendant denies that the CEA "accepted that Asperger Syndrome is a neurological disability that makes [Plaintiff] say things [he doesn't] mean." The CEA believes that Asperger's Syndrome is a psychological disability. Defendant denies that Plaintiff's Asperger's Syndrome "makes [him] say things [he doesn't] mean." Defendant states that Plaintiff has other diagnoses, such as Intermittent Explosive Disorder, and that Plaintiff actually means what he says and intends to carry out his threatened actions.

6.    REQUEST FOR ADMISSION NO. 6: You made no attempts whatsoever, to accommodate my disability, beyond the universal accommodations that are offered without qualification to all disabled students.

RESPONSE TO REQUEST FOR ADMISSION NO. 6: Defendant denies Plaintiff's Request for Admission No. 6. On August 14, 2007, at his registration meeting with the CEA, Plaintiff did not request any accommodations but stated that he might need services in the future. When requested by Plaintiff, the CEA responded to any of Plaintiff's requests for reasonable accommodation. Plaintiff is legally responsible to make the request for reasonable accommodations.

On September 19, 2007, Plaintiff met with a graduate assistant who worked for the CEA. Plaintiff reported that he had no issues with his classes or socially, but that he lost the key to his residence hall and his cell phone. Plaintiff further reported having challenging issues dealing with the bookstore, opening a bank account and with his computer. The graduate assistant discussed problem solving with Plaintiff. The graduate assistant also advised Plaintiff that his

medical documentation had not arrived but to let the CEA know if he needed any assistance in the classroom.

On September 24, 2007, the CEA received Plaintiff's medical documentation, and Plaintiff was determined to be eligible for reasonable accommodations based upon his Asperger's Syndrome.  On the same day, Plaintiff was offered the following reasonable accommodations: (a) preferential seating in the front of the class; (b) the opportunity to use a laptop computer in class; and (c) the opportunity for priority registration.  On October 11, 2007, Plaintiff met with the Director of the CEA and discussed difficulties he was experiencing because he lost a book for a class in which he had an upcoming paper due as well as other organizational difficulties.  As a result, Defendant provided another reasonable accommodation to permit Plaintiff to record his classes.  Additionally, the Director of the CEA agreed to assist Plaintiff by obtaining another copy of the book or contacting the course instructor.

On December 4, 2007, the Director of the CEA met with Plaintiff again to discuss then current behavioral issues and to assess how Plaintiff was doing.  This meeting was prompted by a referral based upon a student disciplinary matter involving Plaintiff.  During the meeting, Plaintiff indicated that he was on medication and in the process of getting his prescriptions transferred to the Pat Walker Health Center.  Also during the meeting, the Director of the Office of Community Standards and Student Ethics called the Director of the CEA to request a meeting with her, Plaintiff's Counselor-In-Residence, and Plaintiff to take a team approach to discussing Plaintiff's recent behavior.  When the Director of the CEA presented this request to Plaintiff, however, he appeared unwilling to participate in such a meeting and abruptly left the ongoing meeting with the Director of the CEA.

7.    <u>REQUEST FOR ADMISSION NO. 7</u>: I accepted two accommodations: priority seating in class and priority class registration.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 7</u>: After reasonable inquiry, Defendants lacks sufficient information or knowledge to admit or deny Request for Admission No. 7. At the time the CEA offered various accommodations to Plaintiff, no system existed to track whether Plaintiff followed up and used the accommodations. Defendant, therefore, currently lacks knowledge as to whether Plaintiff used all four accommodations offered to him over the course of the fall, 2007 semester.

8.    <u>REQUEST FOR ADMISSION NO. 8</u>: Both accommodations have absolutely nothing to do with Asperger Syndrome, as the CEA defined it.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 8</u>: Defendant denies Request for Admission No. 8. The basis for Defendant's denial is that both priority seating and priority registration are reasonable accommodations that are beneficial to a person with Asperger's Syndrome. Additionally, Defendant offered other accommodations to Plaintiff.

9.    <u>REQUEST FOR ADMISSION NO. 9</u>: On December 5, 2007, I was thrown off campus for making what you perceived to be a terroristic threat.

<u>RESPONSE TO REQUEST FOR ADMISSION NO. 9</u>: Defendant admits that on December 5, 2007, the Director of the Office of Community Standards and Student Ethics ("OCSSE") imposed an interim suspension against Plaintiff. The Director of OCSSE notified Plaintiff in writing that Plaintiff's conduct presented safety concerns for other University students and that the basis of the interim suspension included two alleged events. First, on December 3, 2007, Plaintiff verbalized a plan to cut his father's forehead and to use his father's blood to write a "letter of forgiveness." Plaintiff further expressed his intent to videotape this act

5

and to place it on You Tube. Second, on December 5, 2007, Plaintiff made repeated threats to a University official that another Virginia Tech incident would occur at the Fayetteville campus unless he received his medications immediately as well as to the Director of OCSSE at the time she met to inform him of the interim suspension. Additionally, Plaintiff threatened to commit suicide if he was suspended on an interim basis due to these events. Plaintiff further threatened to attack a UAPD officer who was present.

10.    REQUEST FOR ADMISSION NO. 10:  You made no attempts, whatsoever, to give my Asperger Syndrome any kind of individualized assessment, to be sure if Asperger Syndrome makes me a violent person.

RESPONSE TO REQUEST FOR ADMISSION NO. 10:  Defendant denies Plaintiff's Request for Admission No. 10. Defendant states that officials of CEA met with Plaintiff repeatedly beginning on August 14, 2007, September 19, 2007, September 24, 2007, October 11, 2007, and December 4, 2007. The CEA offered Plaintiff reasonable accommodations and responded to any requests for reasonable accommodations. Plaintiff never appealed any denial of a reasonable accommodation because no request was denied. Defendant further states that violent behavior and threats of violent behavior are not protected by the Rehabilitation Act or any other federal law.

11.    REQUEST FOR ADMISSION NO. 11:  On January 6, 2008, I had a hearing to remove the suspension spoken of in admission #9.

RESPONSE TO REQUEST FOR ADMISSION NO. 11:  Defendant denies that Plaintiff had a hearing on January 6, 2008. Defendant admits that the All-University Judicial Board ("AUJ") conducted a hearing on January 10, 2008, at 1:30 p.m. for Plaintiff's alleged violations of Rules 1, 8, and 35 of the Code of Student Life. Defendant further admits that the

6

AUJ found Plaintiff responsible for each of the violations and upheld the interim suspension.

The AUJ further determined that Plaintiff would be eligible to re-enroll at the University for the

fall, 2008 semester provided that Plaintiff complied with the following measures:

(1)     The AUJ required Plaintiff to participate in mental health counseling through a licensed psychiatrist. Plaintiff was directed to provide written consent to the Dean of Students or his designee to allow the Dean or his designee to contact Plaintiff's psychiatrist to discuss his progress during treatment sessions. The AUJ indicated that Plaintiff's sessions with the psychiatrist should address Plaintiff's medication needs, the behaviors that result in Plaintiff's referral to AUJ, and Plaintiff's anger management issues that were discussed during the AUJ hearing.

(2)     Upon Plaintiff's re-enrollment at the University, the AUJ required Plaintiff to participate in mental health counseling through Counseling and Psychological Services at the University. Plaintiff was further directed to provide written consent to the Dean of Students or his designee to allow the Dean or his designee to contact Plaintiff's mental health practitioner to discuss Plaintiff's progress during the treatment sessions. The duration of Plaintiff's mental health counseling sessions was directed to be at the discretion of Plaintiff's mental health practitioner.

(3)     Additionally, the AUJ specified that, upon Plaintiff's re-enrollment, Plaintiff would be placed on Conduct Probation for a period of one academic semester.

12:     REQUEST FOR ADMISSION NO. 12: During said hearing, I explained your

legal requirement to accommodate my disability, but you ignored my explanation and upheld the

suspension.

RESPONSE TO REQUEST FOR ADMISSION NO. 12: Defendant admits that

during the AUJ on January 10, 2008, Plaintiff expressed his opinion that he was legally entitled

to threaten another Virginia Tech incident at the University of Arkansas and to engage in other

conduct because of his Asperger's Syndrome. Defendant, however, disagrees with Plaintiff's

legal opinion. Defendant further admits that the AUJ upheld the interim suspension after

finding, based upon a preponderance of the evidence, violations of Rules 1, 8, and 35 based upon

7

Plaintiff's: (a) threats of committing another Virginia Tech at the University of Arkansas, Fayetteville; (b) threats to commit suicide; and (c) threats to cut his father.

13.    REQUEST FOR ADMISSION NO. 13: In June of 2010, I demanded to be re-admitted to the UA. You responded to this request by banning me from UA campus altogether. This lawsuit ensued.

RESPONSE TO REQUEST FOR ADMISSION NO. 13: Defendant admits that on June 13, 2010, Plaintiff sent a threatening and profanity-filled email to Chancellor G. David Gearhart giving him "sixteen business hours" to comply with a series of demands, including allowing Plaintiff to re-enroll at the University. Plaintiff's email followed previous correspondence with other University officials explaining to Plaintiff that he had not yet complied with the sanctions imposed by the AUJ to return to campus and must do so before his return would be possible. In response to Plaintiff's threatening email, Lt. Vance Rice of the University of Arkansas Police Department sent an email to Plaintiff dated June 15, 2010, advising him that a criminal trespass warning was now in effect for a period of one year and that Plaintiff could contact UAPD if he needed to meet with anyone on campus. Based upon this information, Plaintiff's Request for Admission No. 13 is denied except that Defendant admits that Plaintiff filed this lawsuit.

14.    REQUEST FOR ADMISSION NO. 14: There is mutual hatred between us.

RESPONSE TO REQUEST FOR ADMISSON NO. 14: Defendant denies Request for Admission No. 14 to the extent Plaintiff is asserting that the University of Arkansas "hates" Plaintiff. Plaintiff is currently suspended consistent with the decision of the AUJ, and the AUJ has imposed conditions upon Plaintiff's re-enrollment at the University. Plaintiff has not complied with the conditions established by the AUJ, and he may not re-enroll at the

University at this time. After reasonable inquiry, Defendant lacks sufficient information or knowledge to admit or deny whether Plaintiff hates Defendant and is thus unable to respond to this portion of the Request for Admission.

15.     REQUEST FOR ADMISSION NO. 15: Attending a different college would probably be an easier remedy than being forcibly reinstated into your clientele.

REPONSE TO REQUEST FOR ADMISSION NO. 15: Defendant denies Plaintiff's Request for Admission No. 15. Plaintiff will be eligible to be considered for re-enrollment at the University after meeting the conditions established by the AUJ. After reasonable inquiry, Defendant lacks sufficient information or knowledge to know whether Plaintiff believes that it would be easier to attend another college than complying with his judicial sanctions issued by the AUJ.

16.     REQUEST FOR ADMISSION NO. 16: Because of your actions, my student loan debt has gone from $5,000 to nearly $50,000 as I wandered from school to school to try to find myself.

RESPONSE TO REQUEST FOR ADMISSION NO. 16: After reasonable inquiry, Defendant lacks sufficient information or knowledge to know the amount of Plaintiff's student loan debt or whether Plaintiff has tried to find himself at different schools. Furthermore, Defendant denies any responsibility for Plaintiff's student loan debt or Plaintiff's actions. Defendant, therefore, denies Request for Admission No. 16.

17.     REQUEST FOR ADMISSION NO. 17: Because you deprived me of my inability to pay my student loans, I defaulted on them, and my credit plummeted.

RESPONSE TO REQUEST FOR ADMISSION NO. 17: Defendants denies Request for Admission No. 17. Defendant is responsible for violating the Code of Student

Conduct as determined by the AUJ and for the consequences of his actions. Defendant lacks

sufficient information or knowledge regarding Plaintiff's credit history.

Defendant reserves the right to supplement or modify these responses as permitted by the

Federal Rules of Civil Procedure.

Respectfully submitted,

By: _____

T. SCOTT VARADY
Arkansas Bar No. 93172
WILLIAM R. KINCAID
Ark. Bar No. 93125
Associate General Counsel
University of Arkansas
421 Administration Building
Fayetteville, AR 72701
Phone: 479-575-5401
E-mail: svarady@uark.edu

and

JEFFREY A. BELL
Arkansas Bar No. 77009
Senior Associate General Counsel
University of Arkansas
2404 N. University Avenue
Little Rock, AR 72207
(501) 686-2520
E-mail: jbell@uasys.edu

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that on March 6, 2012, I caused a copy of Defendant's Responses to Plaintiff's Requests for Admissions to be served upon David Stebbins via First-Class U.S. mail at the following addresses:

David Stebbins
5800 Law Drive
Harrison, AR 72601

T. Scott Varady
Associate General Counsel

EXHIBIT

C

United States District Court for the
Western District of Arkansas
David Stebbins                          Plaintiff
vs          Case No. 10-5125
University of Arkansas              Defendant
Interrogatory

1. Please provide an exhaustive and thorough set of
explanations for why you denied everything you
denied, and raised every defense you raised, in your
answer, including why you think it is wrong, what
you believe the truth to be, and any other details
you can think of.

2. Please provide an exhaustive and thorough set of
explanations for why you denied everything you
denied in your response to my requests for admissions,
including all the details requested above.

3. Please provide an exhaustive and thorough set of
explanations for why you did all the things you
admit to doing,* including why you thought you could
get away with them.

4.

REQUEST FOR PRODUCTION

1. Please submit all documents you have on file where
my name appears, especially CEA records, disciplinary
records, and the audio recordings of the Jan. 6, 2008
hearing, as well as a written transcript of it.

2. Please submit all documents which verify the factual
accuracy of all your ⊗ answers to my requests
* also, why you didn't do everything you didn't do, like accommodate my disability.

for admissions, interrogatories, and your Answer.

David Stebbins
David Stebbins
5800 Law Dr.
Harrison, AR 72601

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID STEBBINS                                                    PLAINTIFF

v.                                         Civil NO. 10-5125

UNIVERSITY OF ARKANSAS;
OFFICE OF THE CHANCELLOR                           DEFENDANT

## DEFENDANT'S RESPONSES TO PLAINTFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

Comes Defendant, University of Arkansas ("University" or "Defendant"), acting by and through its undersigned counsel, pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure and submits these Responses to Plaintiff's Interrogatories and Requests for Production of Documents.

1.    INTERROGATORY NO. 1:  Please provide an exhaustive and thorough set of explanations for why you denied everything you denied, and raised every defense you raised, in your answer, including why you think it is wrong, what you believe the truth to be, and any other details you can think of.

RESPONSE TO INTERROGATORY NO. 1:  Objection.  Defendant objects to Interrogatory No. 1 because it invades the attorney-client communication and the attorney work product privileges.  Defendant further objects because Interrogatory No. 1 is misleading, overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence.  Specifically, the Interrogatory is misleading, vague and ambiguous as to the specific pleadings being referenced and the specific information being sought.  The Interrogatory is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence because the Interrogatory seeks information

1



regarding claims that have been dismissed by the Court.  Additionally, assuming that Plaintiff is referring to Defendant's Answer to the Amended Complaint (filed by Plaintiff on October 7, 2010), the Interrogatory exceeds the permissible number of interrogatories, including discrete subparts, under Fed. R. Civ. P. 33(a)(1).

Subject to and without waiving any of the foregoing objections and assuming that Interrogatory No. 1 is referring to Defendant's Answer to the Amended Complaint (filed by Plaintiff on October 7, 2010), Defendant denied certain allegations or portions of allegations because of the requirements of Fed. R. Civ. P. 8(b), and Defendant hereby incorporates the text of Rule 8(b) herein by reference.  In certain instances, Defendant lacked sufficient information to admit or deny Plaintiff's allegations, and Defendant, therefore, denied such allegations or parts of allegations because of the requirements of Fed. R. Civ. P. 8(b).  In general, Defendant denied Plaintiff's claims of discrimination because they are untrue.

As characterized by the Court's Order on Defendant's Motion to Dismiss on May 19, 2011, the sole surviving claim is Plaintiff's assertion of disability discrimination under Section 504 of the Rehabilitation Act because the University allegedly failed "in 2010 to allow [Plaintiff] to re-enroll as a student after he was banned from campus in 2007.  Stebbins contends that he has Asperger Syndrome, and that UA made no attempt to accommodate this disability."  In response to Plaintiff's Interrogatory and without waiving its objections, Defendant states as follows. Defendant denies that it violated Plaintiff's legal rights at all, including under the Rehabilitation Act, for many reasons, including, but not limited to, the following:

(A) As a matter of law, Plaintiff is not entitled to the protection of the Rehabilitation Act because he presented a direct threat to the University community on December 5, 2007 (when he was suspended on an interim basis based upon his repeated threats and

conduct, including: Plaintiff's December 3, 2007, threat to cut his father's forehead; to use his father's blood to write a "letter of forgiveness"; to videotape the attack and post it on YouTube; Plaintiff's repeated threats to commit another "Virginia Tech incident" at UAF if he didn't get an immediate doctor's appointment and if he was suspended on an interim basis; Plaintiff's repeated threats of suicide if he was suspended on an interim basis; and Plaintiff's threats to physically attack UAPD's Lt. Vance Rice in hopes that Lt. Rice to shoot and kill Plaintiff); on January 10, 2008 (when Plaintiff's interim suspension was reviewed and the All-University Judicial Board found Plaintiff responsible for violating Rules 1, 8, and 35 of the Code of Student Life based upon Plaintiff's multiple threats to commit another "Virginia Tech incident" on campus, Plaintiff's threats to commit suicide, and Plaintiff's verbalized plan to cut up his father); and on June 13, 2010 (when Plaintiff sent a threatening and profanity-filled email to Chancellor G. David Gearhart as an "individual" and demanded, within a matter of 16 hours, that the Chancellor remove Plaintiff's suspension, override of any of Plaintiff's debts to the University, and readmit Plaintiff to the University, in Plaintiff's words "on the spot, no applications, no fucking interviews, no jack shit").

(B)  As a result of Plaintiff's violations of the Code of Student Life, the All-University Judicial Board *suspended* Plaintiff solely for the spring, 2008 semester, and Plaintiff was permitted to re-enroll for the fall, 2008, semester subject to complying with certain conditions, including: (i) obtaining counseling; and (ii) continuing counseling upon returning to campus; and (iii) permitting campus officials to consult with Plaintiff's mental health providers to determine whether Plaintiff should be permitted

3

to re-enroll and to continue monitoring Plaintiff's progress after returning to campus. Plaintiff did not comply with these requirements and was not eligible to return to campus when Plaintiff sent a threatening email to Chancellor Gearhart on June 13, 2010. The University was not required to allow Plaintiff to re-enroll until Plaintiff complied with the AUJ's judicial sanctions.

(C) The University reviewed Plaintiff's June 13, 2010 email, in consultation with the University of Arkansas Police Department, and the email was determined to constitute a threat to the safety of Chancellor Gearhart and the University community. Therefore, UAPD issued a criminal trespass warning against Plaintiff for a period of one year. UAPD advised Plaintiff, however, that he could come to campus by working with UAPD. Plaintiff, therefore, presented a direct threat and was not entitled to the protection of the Rehabilitation Act for sending a threatening email to Chancellor Gearhart.

(D) During his January 10, 2007, judicial hearing, the audio recording demonstrates that Plaintiff admitted to making the "Virginia Tech" threats and claimed that his conduct should be excused because he has Asperger's Syndrome. A direct threat is not protected by the Rehabilitation Act. To the extent that Plaintiff alleges that he made a request for accommodations that was denied, Defendant did not deny any requests for accommodations. Additionally, to the extent Plaintiff alleges that any request was denied, Defendant states that Plaintiff did not make the request in advance of the need for the accommodation. Moreover, as a matter of law, Defendant states that Plaintiff failed to exhaust administrative remedies because he failed to follow the University's policy for challenging the denial of a requested accommodation by filing a grievance

4

under the "UA 504/ADA Student Grievance Procedure." Accordingly, Plaintiff's discrimination claim is barred as a matter of law.

(E) As a matter of law, Plaintiff's unilateral demand to be re-enrolled at the University and to have his student account eliminated does not state a legal claim upon which relief may be granted.

(F) On December 5, 2007, when Plaintiff repeatedly threatened another "Virginia Tech" incident, threatened to commit suicide, threatened to attack a UAPD officer, and threatened to cut up his father (on December 3, 2007), Plaintiff was taking his medications and had not been off them.

(G) Plaintiff did not exhaust his administrative remedies at the University with regard to any alleged denial of any reasonable accommodation. The University maintains a policy for students to grieve the denial of any accommodations under the ADA. Plaintiff never filed a grievance for the alleged denial of any accommodations.

In support of this response, Defendant incorporates by reference all documents being produced in response to Plaintiff's Requests for Production. Defendant further invokes Fed. R. Civ. P. 33(d) in response to Interrogatory No. 1 and directs Plaintiff to all records being produced in response to Plaintiff's Requests for Production.

2.     INTERROGATORY NO. 2: Please provide an exhaustive and thorough set of explanations for why you denied everything you denied in your response to my requests for admissions, including all the details requested above.

RESPONSE TO INTERROGATORY NO. 2: Objection. Defendant objects to Interrogatory No. 2 because it invades the attorney-client communication and attorney work product privileges. Defendant further objects because Interrogatory No. 2 is duplicative,

5

misleading, overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Interrogatory is misleading, vague and ambiguous as to the specific aspects of Defendant's responses to Plaintiff's Requests for Admissions and the specific information now being sought. In fact, Plaintiff made this request prior to receiving Defendant's responses. The Interrogatory is duplicative, unduly burdensome and overly broad because Defendant explained the basis for its denials in its Responses to Plaintiff's Requests for Admissions. Additionally, as presented, this Interrogatory exceeds the permissible number of interrogatories, including discrete subparts, under Fed. R. Civ. P. 33(a)(1).

Subject to and without waiving any of the foregoing objections, Defendant denied portions of Plaintiff's Requests for Admissions because of the requirements of Fed. R. Civ. P. 36, and Defendant hereby incorporates the text of Rule 36 herein by reference. In certain instances, Defendant lacked sufficient information to admit or deny Plaintiff's allegations, and Defendant, therefore, denied such allegations or parts of allegations because of the requirements of Rule 36. In general, Defendant denied portions of Plaintiff's Requests for Admissions because the statements or characterization of certain matters are inaccurate and/or untrue.

Pursuant to Fed. R. Civ. P. 10(c), Defendant hereby incorporates Defendant's Responses to Plaintiff's Requests for Admissions herein in response to Interrogatory No. 2. Defendant further invokes Fed. R. Civ. P. 33(d) in response to Interrogatory No. 2 and directs Plaintiff to all records being produced in response to Plaintiff's Requests for Production. Additionally, Defendant incorporates its Response to Interrogatory No. 1 herein by reference.

3.    INTERROGATORY NO. 3: Please provide an exhaustive and thorough set of explanations for why you did all the things you admit to doing*, including why you thought you

6

could get away with them. (*also, why you didn't do everything you didn't do, like accommodate my disability.)

RESPONSE TO INTERROGATORY NO. 3: Objection. Defendant objects to Interrogatory No. 3 because it invades the attorney-client communication and attorney work product privileges. Defendant further objects because Interrogatory No. 3 is misleading, overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, the Interrogatory is misleading, vague and ambiguous because it is unclear what information Plaintiff is seeking or the basis for it. The Interrogatory is unduly burdensome, overly broad and not reasonably calculated to lead to the discovery of admissible evidence because the Interrogatory requires Defendant to speculate as to what Plaintiff seeks. Further, the Interrogatory effectively exceeds the permissible number of interrogatories, including discrete subparts, under Fed. R. Civ. P. 33(a)(1) by requiring Defendant to respond to an unlimited number of aspects of each Response to Plaintiff's Requests for Admissions.

Subject to and without waiving any of the foregoing objections, Defendant admitted portions of Plaintiff's Requests for Admissions because of the requirements of Fed. R. Civ. P. 36, and Defendant hereby incorporates the text of Rule 36 herein by reference. In general, Defendant admitted certain portions of Plaintiff's Requests for Admissions because the information contained in the specific request was true or correct.

Pursuant to Fed. R. Civ. P. 10(c), Defendant hereby incorporates Defendant's Responses to Plaintiff's Requests for Admissions herein in response to Interrogatory No. 3. Defendant further invokes Fed. R. Civ. P. 33(d) in response to Interrogatory No. 3 and directs Plaintiff to all records being produced in response to Plaintiff's Requests for Production. Additionally,

Defendant incorporates its Response to Interrogatory Nos. 1 and 2 herein by reference. Defendant denies that it failed to accommodate Plaintiff's disability. Defendant denies trying to "get away" with anything.

RESERVATION OF RIGHTS AND SUPPLEMENT TO DEFENDANT'S INITIAL DISCLOSURES: Defendant affirmatively reserves the right to supplement the foregoing responses and produce additional documents as permitted by the Federal Rules of Civil Procedure. The foregoing responses shall also supplement Defendant's Initial Disclosures. Nothing contained in Defendant's Responses to Plaintiff's Interrogatories shall be deemed, construed or operate as an admission of liability in this case, and all of Plaintiff's allegations of a violation of any law, including, without limitation, the Rehabilitation Act, are denied.

## RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION

1.    REQUEST FOR PRODUCTION NO. 1: Please submit all documents you have on file where my name appears, especially CEA records, disciplinary records, and all the audio recordings of the Jan. 6, 2008 hearing, as well as a written transcript of it.

RESPONSE TO REQUEST FOR PRODUCTION NO. 1: Defendant is producing the enclosed records in response to Production Request No. 1. Defendant states, however, the All-University Judicial Board created an audio recording of Plaintiff's judicial hearing on January 10, 2008. A copy of a CD-R containing the audio recording of the hearing is included herein. A written transcript, however, is not kept at judicial hearings. Defendant objects to Production Request No. 1 to the extent Plaintiff seeks records protected by the attorney-client communication and work product privileges. Subject to and without waiving any

of the foregoing objections, Defendant is producing the enclosed records in response to Production Request No. 1.

2.    REQUEST FOR PRODUCTION NO. 2:  Please submit all documents which verify the factual accuracy of all your answers to my requests for admissions, interrogatories, and your Answer.

RESPONSE TO REQUEST FOR PRODUCTION NO. 2:  Objection.  Defendant objects to Production Request No. 2 to the extent Plaintiff seeks records protected by the attorney-client communication and work product privileges.  Defendant further objects to Request for Production No. 2 as vague, ambiguous, unduly broad, and overly burdensome.  Production Request No. 2 is an ill-defined, catch-all request that does not provide sufficient specificity to enable Defendant to respond in a reasonable manner.

Subject to and without waiving any of the foregoing objections, Defendant is producing the enclosed records in response to Production Request No. 2.  Additionally, pursuant to Fed. R. Civ. P. 10(c), Defendant hereby incorporates Defendant's Initial Disclosures (including, but not limited to, all records produced as part of Defendant's Initial Disclosures at any time), Defendant's Responses to Plaintiff's Interrogatories, and Defendant's Answer (including all attachments thereto).

RESERVATION OF RIGHTS AND SUPPLEMENT TO DEFENDANT'S INITIAL DISCLOSURES:  Defendant affirmatively reserves the right to supplement the foregoing responses as permitted by the Federal Rules of Civil Procedure.  The foregoing responses shall also supplement Defendant's Initial Disclosures.  Nothing contained in Defendant's Responses to Plaintiff's Production Requests shall be deemed, construed or operate as an admission of liability

in this case, and all of Plaintiff's allegations of a violation of any law, including, without limitation, the Rehabilitation Act, are denied.

Respectfully submitted,

By: _____

T. SCOTT VARADY
Arkansas Bar No. 93172
WILLIAM R. KINCAID
Ark. Bar No. 93125
Associate General Counsel
University of Arkansas
421 Administration Building
Fayetteville, AR 72701
Phone: 479-575-5401
E-mail: svarady@uark.edu

and

JEFFREY A. BELL
Arkansas Bar No. 77009
Senior Associate General Counsel
University of Arkansas
2404 N. University Avenue
Little Rock, AR 72207
(501) 686-2520
E-mail: jbell@uasys.edu

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

     I certify that on March 7, 2012, I caused a copy of Defendant's Responses to Plaintiff's Interrogatories and Requests for Production of Documents, to be served upon David Stebbins, via Federal Express at the following addresses:

David Stebbins
5800 Law Drive
Harrison, AR  72601

 

T. Scott Varady
Associate General Counsel

11

EXHIBIT
E

FEB 27 2012

United States District Court for the
Western District of Arkansas
David Stebbins                              Plaintiff
vs          Case No. 10-5125
University of Arkansas                      Defendant
INITIAL DISCLOSURES
Comes now, pro se Plaintiff David Stebbins, who
hereby submits the following initial disclosures.
The following people may have discoverable infor-
mation:
1. Kim Brecklein: ~~Bes~~ Admissions advisor at North
Arkansas College. She possesses knowledge that I
accumulated an enormous student loan debt as I
went from college to college and major to major
in an attempt to find myself.
2. The three major credit bureaus. They possess
knowledge of my ~~finance~~ debt.
3. Rita Stebbins. Her address is 8527 Hopewell
Rd, Harrison, AR 72601, and her phone number
is (870) 743-4386. She possesses knowledge of
the events that transpired in in the months of
Dec. 2007 to Jan. 2008. She also has knowledge
of my Asperger Syndrome.
4. Crossroads Medical Clinic: Possesses my medical
records, proving that I have Aspergers.
I have no documents currently in my possess-
ion. that I may voluntarily introduce, due to my
newfound incarceration.

The following is an assessment of my damages:
First, I seek injunctive relief for you to, 1)
expunge the expulsion from campus and school
from my records, and 2) if I choose to, WHEN
I choose, unconditionally re-admit me into the
UA's student body.
  As for damages, I seek the $50,000 in student
loans that you cost me ~~~~ (that's $40,000
in loans I took out after I left UA, plus the
$10,000 in loans I took for the semester I was
here, which I lost because I was unable to
get credit for my classes.
  Because Defendant's actions were done in
wreckless disregard for my federally protected
rights, I also seek ten times that amount, or
$500,000, in punitive damages.
  I have no insuarance policy in this case.

David Stebbins
David Stebbins
5800 Law Dr.
Harrison, AR 72601

FEB 27 2012

United States District Court for the
Western District of Arkansas
David Stebbins                    Plaintiff
vs              Case No. 10-5125
University of Arkansas          Defendant
            ~~INTERROGATORIES~~ ~~AND~~
            ~~REQUESTS~~

90 Provide an exhaustive, thorough, and specific set
of objections you have, to the factual accuracy
of the content of ~~all Exhibits I sent you~~
~~which contain~~

A) all ~~in~~ initial disclosures, responses to your discovery
requests, and affidavits filed by Plaintiff and/or
his witnesses.
B) all information you collect when ~~inspectin~~ acting
on my granting of a request to permit in-
spection.
    Remember that you are required to supplement
your responses as they become available.
                        David Stebbins
                        David Stebbins
                        5800 Law Dr.
                        Harrison, AR 72601