IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID STEBBINS                                                                              PLAINTIFF

v.                                             Civil No. 10-5125

UNIVERSITY OF ARKANSAS;
OFFICE OF THE CHANCELLOR                                                    DEFENDANT

BRIEF IN OPPOSITION TO PLAINTIFF'S
EMERGENCY MOTION FOR SANCTIONS

Comes Defendant, University of Arkansas ("University" or "Defendant"), acting by and through its undersigned counsel, and submits this Brief in Opposition to Plaintiff's Emergency Motion for Sanctions ("Motion") filed on July 27, 2012.

In his Motion, Plaintiff seeks sanctions against each of his parents, Rita Stebbins and David D. Stebbins, requiring each of them to submit to another deposition at their expense, to pay for transportation for all interested persons, and "to cease and desist their bad faith question-dodging." (Mot. at 3.) For the reasons that follow, the Motion should be denied.

In consistent disregard of Local Rule 7.2, Plaintiff once again files his Motion without a supporting brief. The Motion should be denied for that reason alone. Additionally, the Motion should be denied because it is unsupported by any evidence. Plaintiff appears to acknowledge that his self-serving and one-sided characterizations of the events at his parents' depositions are insufficient to provide a basis to grant his Motion. In Paragraph 4 of his Motion, Plaintiff admits that he does "not have any proof" to support his request for sanctions. The University does not agree with Plaintiff's

1

assertions that Plaintiff's parents failed to answer the questions presented to each of them. Accordingly, Plaintiff's request for the Court to simply accept Plaintiff's allegations as true should be disregarded. Contrary to any assertions that his parents failed to answer any questions, the University believes Plaintiff's parents, each of whom are separate defendants in pending lawsuits initiated against them by their son, attempted to respond to the best of their ability.

The University issued subpoenas to Rita Stebbins and David D. Stebbins commanding their appearance for a deposition. Plaintiff did not arrange the depositions, cause the Court to issues subpoenas to depose his parents, pay for the court reporter, or the witness and mileage fees. Plaintiff was entitled to cross-examine the witnesses, and he had every opportunity to do so. The witnesses are not responsible for Plaintiff's failure to ask straight-forward questions that are comprehensible. Plaintiff's cross-examination "questions" routinely consisted of rambling monologues followed by an impatient and agitated directive that the witness answer the question in a way desired by Plaintiff. The questions often related to issues beyond the scope of the direct examination and reflected Plaintiff's desire to achieve objectives in his pending criminal and other civil cases.

When the witnesses did their best to answer Plaintiff's confusing questions, they often needed to qualify their responses because of the way Plaintiff posed his "questions." They did not refuse to answer Plaintiff's questions, but they sought to give their answers – not the responses Plaintiff demanded or that hinged on Plaintiff's concocted legal theories as reflected in Paragraphs 6 - 8 of his Motion. Plaintiff frequently became argumentative with the witnesses and repeatedly threatened to invoke

the power of this Court to impose monetary sanctions on his parents when he knew that they lacked the financial resources to pay such sanctions.  To protect the integrity and decorum of the judicial system, this Court should not reward Plaintiff's efforts to bully answers from his parents.   Short of asking and answering his own questions to fit his elaborate and frivolous legal theories, Plaintiff would not have been satisfied with any response to any "question."  The "contract" referenced in Paragraph 8 illustrates this fact.

On direct examination of David D. Stebbins, counsel for the University sought to discover information about Plaintiff's knife attack on his father on Thanksgiving Day in 2011.  As reflected in Defendant's discovery responses in this case, Plaintiff made a threat to Monica Holland, Director of the Office of Community Standards and Student Ethics at the University, on December 3, 2007.  Specifically, Plaintiff told Dr. Holland that he desired to cut his father's head with a knife, write a "letter of forgiveness" with his father's blood, videotape the entire act, and then post the video on *You Tube*.  Plaintiff told Dr. Holland that he got the "chills" thinking of carrying out such an act.  This threat, in combination with Plaintiff's threats to commit another Virginia Tech incident at the University and to commit suicide, formed the grounds for Plaintiff's interim suspension from the University on December 5, 2007.

The interim suspension was upheld by an All-University Judicial Board ("Judicial Board") following an extensive hearing on January 10, 2008.  Consequently, the Judicial Board suspended Plaintiff for the spring, 2008 semester and ordered him to complete counseling prior to re-enrolling in fall, 2008 so that he would not be a threat to himself or other members of the University community.  In addition to Asperberger's Syndrome, Plaintiff has a condition known as Intermittent Explosive Disorder in which he loses his

temper and becomes violent. Based upon records produced to Plaintiff in discovery and the deposition testimony of Plaintiff's counselor from February through April, 2008, at Ozark Guidance Center, Plaintiff continued to be "dangerous" and a threat to others.

Plaintiff returned to Harrison in April, 2008, never completed his student judicial sanctions and did not seek to re-enroll at the University until January, 2010 when he began emailing Dr. Holland and demanding to be allowed to re-enroll at the University. Dr. Holland repeatedly advised Plaintiff of the need to complete his judicial sanctions. Dissatisfied with these responses, on June 13, 2010, Plaintiff sent a profane and threatening email to Chancellor G. David Gearhart giving him 16 hours to re-admit Plaintiff unconditionally, to expunge Plaintiff's suspension and to cancel Plaintiff's outstanding debt. Based upon a review of the June 13 email and Plaintiff's student judicial record (including his failure to complete his counseling) conducted by a threat assessment team assembled by the University, the University of Arkansas Police Department issued a criminal no trespass warning to Plaintiff and this lawsuit followed.

Plaintiff's Thanksgiving knife attack on his father reflected the culmination of a threat first articulated to Dr. Holland on December 3, 2007. This attack underscored the fact that Plaintiff remained a direct threat to himself and members of the University community from the time his suspension was upheld in 2008 to the present. Accordingly, the deposition testimony of Plaintiff's father was necessary to confirm the knife attack.

At the deposition, Plaintiff asked a series of questions to his father regarding a "contract." After returning to Harrison in April, 2008, Plaintiff was eventually evicted from his apartment and returned to his parents' home subject to a "contract." Although the University's counsel did not ask a single question about the "contract," Plaintiff asked

4

a series of questions about the "contract" as referenced in Paragraph 8 of the Motion. The "contract," however, is irrelevant to this case and is not likely to lead to the discovery of relevant information. Nevertheless, Plaintiff asked a number of questions regarding the "contract," and Plaintiff's father did his best to answer them. The "contract" was not offered as an exhibit or shown to the witness, but Plaintiff questioned his father on whether the "contract" entitled Plaintiff to "full" access to the Internet.

Plaintiff's apparent point was that the speed of the Internet access was too slow, and thus the poor speed did not provide "full" access. In his deposition testimony, Plaintiff's father testified that he attempted to reset the computer's modem and router, but that still did not satisfy Plaintiff. The witness testified that, given Plaintiff would never be satisfied with the speed of the Internet, he took the computer's router into his bedroom and went back to bed. Shortly thereafter, according to the father, Plaintiff came into the bedroom with a knife and attacked him by slicing his face and head (after the knife bent when Plaintiff attempted to stab his father in the abdomen) and expressed a desire "to taste" his father's blood. According to his father, Plaintiff called the sheriff after the attack and falsely reported that the father was in the kitchen cutting his own face and head with a knife. Law enforcement responded to the call and arrested Plaintiff.

Following the Thanksgiving knife attack and his incarceration, Plaintiff filed an $11,000,000 civil suit against his father for defamation. In sum, Plaintiff asserts that his father self-inflicted the knife wounds and conspired with law enforcement to have Plaintiff arrested. As asserted in the Motion, however, Plaintiff contends that the father's action of taking the router (property purchased by the father) into the bedroom somehow justified Plaintiff's knife attack. Plaintiff's "contract" questions, therefore, primarily

related to his civil suit against his father. Despite the lack of relevance, Plaintiff's father attempted to address Plaintiff's questions but eventually objected to the repetitive, argumentative, and irrelevant nature of the questions. Moreover, Plaintiff's parents were not represented by counsel at their depositions.

The fact that Plaintiff was not happy with his parents' answers is not a basis to impose sanctions. Additionally, Plaintiff had every opportunity to re-phrase his questions and to obtain answers. Most importantly, Plaintiff could have contacted the Court and requested a ruling on his question and the answer of the witness. Plaintiff, however, may not argue with witnesses, ask questions based on long-winded, rambling and ambiguous allegations, attempt to intimidate and harass the witnesses, and then seek sanctions when he doesn't like the answers given to poorly formulated and improper questions.

In summary, the Motion is unsupported by a brief or any evidence as admitted by Plaintiff. Beyond these shortcomings, Plaintiff's allegations and mischaracterizations are self-serving. The witnesses did their best under difficult circumstances and despite being repeatedly threatened with monetary sanctions by Plaintiff. No basis in fact or law exists for granting the Motion.

For all for all of the foregoing reasons, Defendant University of Arkansas prays that the Court deny the Motion and grant Defendant all other relief which the Court deems just and proper.

Respectfully submitted,

By:/s/ T. Scott Varady
T. SCOTT VARADY
Associate General Counsel
Arkansas Bar No. 93172
E-mail: svarady@uark.edu

WILLIAM R. KINCAID
Associate General Counsel
Ark. Bar No. 93125
E-mail: wkincaid@uark.edu
TAMLA J. LEWIS
Associate General Counsel
Ark. Bar No. 2005237
E-mail: tjlewis@uark.edu
University of Arkansas
421 Administration Building
Fayetteville, AR 72701
Phone: 479-575-5401

and

JEFFREY A. BELL
Senior Associate General Counsel
Arkansas Bar No. 77009
University of Arkansas
2404 N. University Avenue
Little Rock, AR  72207
(501) 686-2520
E-mail: jbell@uasys.edu

COUNSEL FOR THE
UNIVERSITY OF ARKANSAS

## CERTIFICATE OF SERVICE

      I certify that on this 31st day of July, 2012, I caused a copy of the foregoing Defendant's Brief in Opposition to Plaintiff's Emergency Motion for Sanctions to be served upon Plaintiff David Stebbins via First-Class U.S. Mail at the following address:

      David Stebbins
      123 W. Ridge Street, Apt. D
      Harrison, AR  72601

      James Goldie
      103 West Industrial Park Rd., Suite B
      P.O. Box 1595
      Harrison, AR  72602-1595

      /s/ T. Scott Varady
      T. Scott Varady
      Associate General Counsel