U.S. District Court for the
Western District of Arkansas

U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

David Stebbins

US

~~Board~~ Univ. of AR

Case No. 10-512 S

AUG 22 2012

CHRIS R. JOHNSON, Clerk
By
~~Deputy Clerk~~

Plaintiff

Defendant

SUPPLEMENT TO MOTION FOR
SANCTIONS

Comes now, pro se plaintiff David Stebbins, who hereby submits the following supplement to my motion to have my parents' depositions re-scheduled at there expense.
Please find enclosed the transcripts* of these depositions. The reason I took so long to file this supplement is because I read the transcripts several times, with breaks in between so I didn't draft this pleading on my first read.
Here is a non-exhaustive list of specific infractions that Rita Stebbins committed in her deposition:
1. Page 105, Lines 24-25, no straight answer. Objection, non-responsive.
2. Page 106, Lines 19-24, no straight answer. Objection, non-responsive.
3. Page 108, Lines 16-23, Objection, non-responsive.
4. Page 109, Line 1. Objection, opinion.
5. Page 111, Line 19. Objection, non-responsive.
6. Page 112, Lines 3-7. Objection, non-responsive.
7. Page 113, Line 2. Objection, opinion.
8. Page 113, Lines 14-18. Objection, non-responsive.
9. Page 114, Lines 20-23. Objection, non-responsive.
10. Page 116, Lines 1-10. Objection, vague answer.
11. Page 119, Lines 6-10. Objection, non-responsive.
12. Page 120, Line 2-16. Objection, non-responsive and vague answer.
13. Page 121, Lines 18-25. Objection, non-responsive and vague answer.
14. Page 123, Lines 19-24. Objection, non-responsive.
15. Page 124, Lines 1-25. Non-responsive.
16. Page 125, Lines 2-5. Non-responsive.
~~17~~ non-responsive.

As you can see, Rita Stebbins has a lot of mistakes to ~~was~~ make up for. I ask that she be ordered to do exactly that, and at her expense.
Now, here is a non-exhaustive list of infractions commited by David D. Stebbins during his deposition.
1. Page 23, Lines 15-24. Non-responsive.
2. Page 24, Line 3. Non-responsive and vague answer.
3. Page 24, Lines 5-6. Non-responsive.
4. Page 25, Lines 21-23. Non-responsive.
5. Page 26, Lines 2-6. Non-responsive.
6. Page 29, Lines 3-9. ~~There is~~ Medical advice given by a non-expert.
7. Page 29, Lines 7-12. Non-responsive.

* see P.S. comment after signature.

8. Page 30, Lines 2-5. Non-responsive.
9. Page 32, Lines 14-19. Non-responsive.
10. Page 32, Lines 20-23. Non-responsive.
11. Page 33, Lines 1-2. Non-responsive.

As you can see, whereas Rita Stebbins gave some semblance of good faith, ~~David~~ even though that good faith waned by the end, her husband had bad faith from the very start. His entire ~~depositions~~ deposition was a fraction of the size of Rita's direct examination alone, yet he had almost as many infractions! It was abundantly clear that this man only gave straight answers if he felt like it. Therefore, this Court should teach him a lesson about dodging questions in a court case, and ordering him to pay for a re-scheduled deposition would be the perfect means to this end.

Wherefore, premises considered, I request that the motion for sanctions be granted

David Stebbins
5800 Law Dr.
Harrison, AR 72601

P.S. I am only including the cross- and redirect examinations. They are the only ~~cross~~ parts relevant to this pleading, and the jail's largest envelope is too small to enclose the entire transcripts

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DAVID STEBBINS                                                PLAINTIFF


vs.            CIVIL NO. 10-5125


UNIVERSITY OF ARKANSAS
OFFICE OF THE CHANCELLOR                        DEFENDANT

---

**ORAL DEPOSITION**

**OF**

**RITA STEBBINS**


**(Taken July 26, 2012, at 9:29 a.m.)**

---

**COPY**

124 West Capitol Ave, Suite 1560, Little Rock, AR 72201
(501)801-1801 * Fax (501)801-1803

4241 Gabel Drive, Suite 3D, Fayetteville, AR 72704
(479)442-7111 * Fax (479)442-7222

Total Technology Litigation Support
"From File to Trial!"
LITTLE ROCK - FAYETTEVILLE
Online scheduling at
www.flynnlegal.com

FLYNN
LEGAL
SERVICES

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
RITA STEBBINS                                                    7/26/2012

Page 104

1   Q    To live as a member of society?

2   A    To live just part of society, in the general

3   population, yeah.

4             MR. STEBBINS:  Look, I know that you

5             have the right to do this and all, but

6             keep in mind that we've got another

7             deposition later today and I'm still

8             going to have the right to question her.

9             So can you please just hurry up?

10            MR. VARADY:  Well, that actually was

11            my last question, Mr. Stebbins, so I'll

12            pass the witness to you.

13            THE WITNESS:  Well, then can I

14            request a bathroom break?

15            MR. VARADY:  Sure.

16            (WHEREUPON, a break was taken from

17            11:46 to 11:51 a.m.)

18                 E X A M I N A T I O N

19   BY MR. STEBBINS:

20   Q    Mrs. Stebbins, I'm just going to be

21   professional and call you Mrs. Stebbins.  The thing

22   that actually caught my ear during his direct

23   examination, the night I was arrested did you claim

24   that it was your understanding that the police

25   officer saw me on the side of the porch cleaning off

1    the knife?

2    A    Yes.

3    Q    That is your understanding of what happened.

4    So in the event that -- now, let's assume that I'm

5    telling you the truth here.  In the event that

6    his -- the original police report that my first

7    public defender gave to me claimed that he found the

8    knife in the kitchen sink already washed off, are

9    you saying that that means that they would have

10   changed their story?

11   A    I wouldn't know because that's the only story I

12   ever heard.

13   Q    But if that was what the original police report

14   said, wouldn't they contradict each other?

15   A    Well, it might, but I don't see -- I find this

16   all irrelevant.

17   Q    Trust me, just like I raised the objections

18   earlier.

19        Mrs. Stebbins, for both knife attacks, both the

20   one allegedly in Carolyn's house and the one that

21   allegedly took place on Thanksgiving night last

22   year, is it correct that you never actually saw it?

23   A    Yes.

24   Q    So you are relying 100 percent on hearsay?

25   A    Reliable hearsay, yes.

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**
**RITA STEBBINS**                                                      **7/26/2012**

Page 106

```
1    Q    But hearsay, nonetheless?

2    A    You admitted --

3    Q    Are you relying on hearsay?

4              MR. VARADY:  Object to the form.

5    A    No, I am not relying on hearsay.  You admitted

6    at least to the one in Hattiesburg.

7    BY MR. STEBBINS:

8    Q    I am talking about -- okay.

9         Now, in the one in Hattiesburg, was Carolyn, at

10   the time -- have we established that she is my aunt

11   and your sister, or she was?

12   A    Yes.

13   Q    Was her body physically weakened due to three

14   decades of smoking?

15   A    Well, yes, but I find that irrelevant.

16   Q    Was her blood pressure especially susceptible

17   to stress?

18   A    I have no idea.

19   Q    Was it reasonably possible that that was the

20   case?

21              MR. VARADY:  Mr. Stebbins, she's not

22         a medical physician who can give a

23         medical opinion.

24   A    This is irrelevant.

25   BY MR. STEBBINS:
```

Page 107

1   Q    I didn't ask you if you knew it was relevant.

2   Just answer the question.

3   A    I have no way of knowing.

4              MR. VARADY:  Mr. Stebbins, I'm going

5              to ask and interpose an objection that we

6              may need to call John Hendren if --

7              you're not permitted to argue with the

8              witness, and you're starting to argue

9              with her.

10             MR. STEBBINS:  I know.  I'm just

11             wanting her to answer the question.  She

12             is the one arguing.

13             MR. VARADY:  She's not a medical

14             professional.  There is no testimony on

15             direct establishing her credentials as a

16             medical professional.  You can render an

17             opinion on the health of her sister.  And

18             therefore, I think you can ask what the

19             sister might have seen or what she

20             observed as far as that knife issue in

21             Hattiesburg, but I think you ought to

22             stay on point with the direct examination

23             and your cross-examination.

24             MR. STEBBINS:  I am staying on

25             point, whether you see it or not.

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                                    **7/26/2012**

Page 108

1    BY MR. STEBBINS:

2    Q     Now, do you know if her blood pressure -- if

3    the family had a desire to avoid running her blood

4    pressure up through stress?

5    A     No.

6    Q     So you're saying that we never had that -- we

7    never feared her blood pressure?

8    A     If individuals did, that was their choice.  In

9    general, no.

10   Q     Do you agree that Mary Catherine, I'm just

11   going to call her Cat, was arguing with Carolyn and

12   causing her stress that night?

13   A     From the story I was told, yes.

14   Q     In the event -- was I a minor at the time?

15   A     Yes.

16   Q     In the event that this knife attack is true, do

17   you think it would have been possible that, in my

18   minor's legal judgment, in my unsound legal judgment

19   that a minor would have, that I was primarily doing

20   it to protect Carolyn?

21              MR. VARADY:  Object to the form.

22              You can answer if you can.

23   A     I find it irrelevant.

24   BY MR. STEBBINS:

25   Q     Yes or no, is that possible?

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
RITA STEBBINS                                      7/26/2012

Page 109

```
 1    A    I would -- I would say no.  In my opinion, no.
 2    Q    So you don't think it is even so much as
 3    possible that that was my motive?
 4                   MR. VARADY:  Object to the form.
 5    A    I don't have an opinion on that one because I
 6    can't --
 7    BY MR. STEBBINS:
 8    Q    That was a yes or no question.
 9                   MR. VARADY:  Object to the form.
10    BY MR. STEBBINS:
11    Q    Is it possible?
12    A    Anything is possible.  Okay.
13    Q    Yes or no, is it possible?
14    A    I'll play along with you.  Yes.
15    Q    Thank you.
16         So if we were to accept that, would that mean
17    that, even if I went overboard because of my minor's
18    legal judgment, that at least my heart was in the
19    right place?
20                   MR. VARADY:  Object to the form.
21    A    I will say yes, but it's irrelevant.
22    BY MR. STEBBINS:
23    Q    On the night I was arrested, to confirm, you
24    admit that it was -- you admit that I was especially
25    irate, even by my standards, correct?
```

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                                                                     **7/26/2012**

Page 110

1  A    Yes.

2  Q    Was there a contract that your husband and I

3  signed that allowed me to stay with you until I

4  could get back on my feet?

5  A    Under certain conditions, yes.

6  Q    Was one of those conditions that I had to

7  respect him?

8  A    Yes.

9  Q    Did he have to reciprocate that respect?

10 A    No.

11 Q    So theoretically, it was possible, whether or

12 not you actually saw it, that he could have just

13 stood an inch from my ear insulting me like a

14 military drill sergeant and I would just have to sit

15 there and take it like a military private; is that

16 correct?

17 A    Theoretically, but it's irrelevant.

18 Q    Yes or no?

19            MR. VARADY:  Objection to the form.

20       She's answered the question.

21 BY MR. STEBBINS:

22 Q    Have you ever heard of something called the

23 battered wife defense?

24 A    I don't think so.

25 Q    Let's give it a -- you know, whether or not

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
**RITA STEBBINS**                                                 **7/26/2012**

Page 111

1    this is the actual legal definition, we're not going

2    to worry about that for the purposes of this line of

3    question, but let's assume that this definition is

4    the one.  It's a politically incorrect one.  It can

5    apply to men and children of both genders and of all

6    ages, but it's mostly used in domestic battery cases

7    where, upon -- where the victim didn't exactly

8    engage in violence, but actually maybe berated,

9    ostracized, criticized, and insulted the defendant

10   to the point where just any reasonable person, in

11   the event -- under the circumstances, would have

12   just snapped and couldn't take it anymore.  Given

13   the theoretical possibility that you cannot testify

14   it didn't happen because you weren't there the whole

15   time, in the event that the State of Arkansas

16   recognizes such a defense, do you think that's a

17   reasonable possibility?

18                    MR. VARADY:  Object to the form.

19   A    I find it irrelevant.

20   BY MR. STEBBINS:

21   Q    Yes or no, is it a possibility?

22                    MR. VARADY:  Object to the form.

23   A    I think that is highly unlikely because your

24   definition indicates it's not a one-shot thing, and

25   so it would not be a -- it would had to have been a,

Page 112

1    quote, ongoing thing.

2    BY MR. STEBBINS:

3    Q    So you think that it's impossible that it's an

4    ongoing thing, that it just built up to that

5    Thanksgiving incident?  You think that's impossible?

6              MR. VARADY:  Object to the form.

7    A    Not impossible, but irrelevant, and it --

8    BY MR. STEBBINS:

9    Q    Is it reasonably possible?

10   A    For some people, maybe, but I know better.

11   Q    Okay.  You're going to have to clarify your

12   answer.

13        Listen.  Listen to me.  If you don't give

14   straight answers, I will ask for the federal judge

15   to reschedule this deposition at your expense.

16   A    I'm answering your questions just like I

17   answered his.  He didn't limit my answers.  He let

18   me explain them.  That's part of my testimony.

19   Q    Please just answer the question.  Is it a

20   reasonable possibility --

21   A    No.

22   Q    -- that things happen behind your back?

23   A    No.

24   Q    That things happened behind your back that you

25   weren't aware of that built up to this?

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
**RITA STEBBINS**                                                7/26/2012

Page 113

1        MR. VARADY:  Object to the form.

2    A    In my opinion, no.

3    BY MR. STEBBINS:

4    Q    I asked you to avoid opinions and stick to

5    empirical facts.

6        MR. VARADY:  I'm going to object to

7            the form, Mr. Stebbins, and I'm going to

8            say again she's entitled to give her

9            answer.  Whether you like it or not, she,

10           under the rules, is entitled to give her

11           answer.

12   A    This is my belief right now.

13   BY MR. STEBBINS:

14   Q    Has your husband ever engaged in any battery,

15   any acts of violence with his family of his own?

16   A    That's irrelevant.

17   Q    Yet, has he engaged in them?

18   A    That's irrelevant to the situation.

19   Q    I will be asking the judge to reschedule this

20   deposition at your expense unless you give an

21   answer, a straight answer.

22       MR. VARADY:  Mr. Stebbins, I'm going

23           to object to the arguments with the

24           witness.  You need to ask your question

25           and let her answer, and then we'll move

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR

**RITA STEBBINS**                                              7/26/2012

Page 114

1          on.

2     BY MR. STEBBINS:

3     Q     Did the contract that I signed to be allowed to

4     stay with you until I could get back on my feet

5     entitle me to full Internet access whenever you were

6     not reading it -- whenever you were not using it?

7     A     Yes, and you got that.

8     Q     Did the contract give him the right to revoke

9     it at any time he wanted?

10    A     I don't remember the exact wording of it.  Do

11    you have a copy of it with you?

12    Q     Not on me, not on hand.

13          Was there any previous negotiation -- was there

14    any previous version of the contract that we

15    ultimately set aside in favor of the one that was

16    actually signed?

17    A     Yeah.

18    Q     Okay.

19    A     But I find all of this irrelevant.

20    Q     If your husband denies the existence of any

21    previous version of the contract on his deposition,

22    does that mean he would have lied?

23    A     He or I, one.

24    Q     Okay.  When I was in grade school, once I was

25    diagnosed with Asperger's syndrome, did you notice a

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                          **7/26/2012**

Page 115

```
 1    sizable reduction in how often I would get in

 2    trouble at school?

 3    A    No.

 4    Q    Really?  I was suspended just as often?

 5    A    I don't recall you being suspended before that

 6    or after, at least in grade school.

 7    Q    Okay.

 8    A    Honestly, I don't recall it.

 9    Q    Was I more violent than a normal child?

10    A    Not in grade school.

11    Q    What about at home when I was a kid?

12    A    Not in my opinion.

13    Q    Okay.  When I was a kid, as a -- as a -- as a

14    parent, would you agree that it was your

15    responsibility to take that initial violent human

16    instinct and tame it out of me?

17              MR. VARADY:  Object to the form.

18    A    Yes, and I tried, or I thought I did.  I'm not

19    perfect.

20    BY MR. STEBBINS:

21    Q    For the most part -- okay.  For the most part,

22    excluding this potential event on -- excluding this

23    supposed exception from last Thanksgiving, would you

24    say that you have successfully tamed that out of me?

25    A    No.
```

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                                                    **7/26/2012**

Page 116

1    Q    Really?  So you're saying that I have actually

2    committed felonies in the past?

3                  MR. VARADY:  Object to the form.

4    BY MR. STEBBINS:

5    Q    Violent acts?

6                  MR. VARADY:  Object to the form.

7    A    I find all of this irrelevant to the case.  I

8    don't see where I have to answer something that's

9    irrelevant to this case.  But as far as it goes, I'm

10   not trying to hide anything.

11   BY MR. STEBBINS:

12   Q    Have I committed any violent acts --

13   A    Yes.

14   Q    -- since I became an adult?

15   A    Maybe not be charged with anything, but yes,

16   you've done them.

17   Q    Okay.  So on the events of December 5, 2007, do

18   you stand firm that I never intended to hurt anyone?

19                  MR. VARADY:  Object to the form.

20   A    Well, I'll answer that because, at that point

21   in time, I don't believe you would have.  I don't

22   believe you would have intended to, not willingly or

23   planning, although I'm afraid now, as time has gone

24   on and you have done without medication and

25   counseling and treatment and you've had time to, as

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                                    **7/26/2012**

Page 117

1   I would say, sit and stew on it, things have

2   changed.  But that day, I would have defended you,

3   yes.

4   BY MR. STEBBINS:

5   Q    So you think absolutely that I cannot function

6   in society without medication?

7   A    Maybe not need medication, but you need

8   something.  You need some kind of help.  You need to

9   get rediagnosed and reevaluated.

10  Q    So you don't think that the presence of an

11  enforcement body by itself is a sufficient deterrent

12  to me committing violent acts?

13              MR. VARADY:  Object to the form.

14  A    I think it is unless there's more to it than

15  what even we know, but it's irrelevant to the case.

16  BY MR. STEBBINS:

17  Q    So you think it's irrelevant to a case where

18  the crux of the case is whether or not I am a danger

19  to a school?

20              MR. VARADY:  Object to the form.

21  BY MR. STEBBINS:

22  Q    Is that what you believe?

23  A    I feel like you're twisting it around on me, so

24  I'm really not sure how to answer that.

25  Q    I'm not twisting it.  If you explain it to me,

Page 118

1    I can clarify.

2    A    I just did.  I told you what I think about it.

3    Q    So you don't think that it's --

4    A    At the time, I don't believe you would -- I

5    truly believe, at that time, you did not mean it to

6    sound like they took it.  As you say, you did not

7    intend for anything to happen, you were afraid

8    because you didn't know what would happen.  It would

9    be like, Don't make me stand up, my foot hurts, I

10   don't know if I can stand on it or not.  You were

11   asking for help.  But now you're different.  Things

12   have changed.  And I believe you could get back to

13   that point.

14   Q    Do you know when I stopped taking my

15   medication?

16   A    Exactly, no.

17   Q    Do you even have so much as a general estimate,

18   like the summer of what year?  Do you even have an

19   estimate?

20   A    All I know, you got some medicine after all of

21   that, so it would have had to have been sometime

22   during '08.  I would guess it was the fall,

23   probably, of '08.

24   Q    How long -- do you know the semesters, like the

25   years that I attended North Arkansas College?

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**
**RITA STEBBINS**                                          7/26/2012

Page 119

1   A    If I remember correctly, you started in August

2   of '08.

3   Q    Do you know when I stopped going?

4   A    No.  I cannot remember.  I remember it

5   happening, but I don't remember when.

6   Q    So in the event -- so you're saying that a good

7   90 percent of the time that I was at NorthArk I had

8   no medication, correct?

9               MR. VARADY:  Object to the form.

10  A    That would be an assumption on my part.

11  BY MR. STEBBINS:

12  Q    Based on the experiences in academic settings

13  that you have borne witness to, would you agree that

14  patience and understanding of my Asperger's and the

15  fact that I don't always -- that I don't mean

16  something unless it's clearly a threat, unless I --

17  let me start that one over.

18       Based on my academic history that you have

19  borne witness to, would you agree that an

20  understanding of my Asperger's and not taking my

21  words as threatening unless they're clearly meant to

22  be taken as such as a sufficient accommodation to

23  allow me to thrive in that environment?

24               MR. VARADY:  Object to the form.

25  A    No.

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR

RITA STEBBINS                                               7/26/2012

Page 120

1   BY MR. STEBBINS:

2   Q    And on what grounds would you believe that

3   simply being patient with me unless I say something

4   that's -- or actually do something violent, but not

5   to -- but to not -- let me start that one over.

6        Why do you believe that it is an insufficient

7   accommodation?

8   A    I don't know enough about today's treatments,

9   but I don't think just being patient is enough.  You

10  can lose your temper and still not be violent, but

11  you get obnoxious or you get just loud.  And even

12  you and I have yelled at each other a time or two,

13  just like me and Daddy and me and your sister.  Just

14  because we're yelling at each other doesn't mean

15  we're committing a felony or that we're fixing to

16  get violent.

17  Q    Okay.  So aside from your husband's baseless

18  accusations about last Thanksgiving, have I ever

19  been arrested for anything?

20           MR. VARADY:  Object to the form.

21  A    No.

22           MR. STEBBINS:  Mr. Varady, would you

23           please clarify so that you don't keep

24           saying this?  What about my form is so

25           imperfect?

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                                      **7/26/2012**

Page 121

1          MR. VARADY:  May we go off the

2      record for a minute?

3          (WHEREUPON, an off-the-record

4      discussion was held.)

5   BY MR. STEBBINS:

6   Q    Well, you have claimed that I refused to speak

7   to you on the phone Thanksgiving night.  Did I

8   flatly state that I would not speak to you, or did I

9   at least demand to know what you wanted to speak to

10  me about before I spoke to you?

11  A    Well, I couldn't understand what you were

12  saying.  I just know your daddy asked me to talk to

13  you, and I said, Well, put him on the phone.  I

14  heard him say, Your mom wants to talk to you.  I

15  heard him say that two or three times, and then he

16  came back and said, Well, he won't talk to you.  And

17  all I could hear was you screaming.

18  Q    So all you know is that he said that I

19  unconditionally refused to talk to you; is that

20  correct?

21  A    Well, that's what it sounds like I'm saying,

22  but the evidence points -- I mean, who is going to

23  stand there with somebody on the other end of the

24  line, not knowing if I can understand what you're

25  saying or not, and then come back with a lie?

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                              **7/26/2012**

Page 122

1  Q    So all he said was that I refused to speak to

2  you unconditionally, not that I continued --

3  A    He didn't say unconditional.

4  Q    But he didn't say that I demanded to know what

5  you wanted to speak to me about, correct?

6  A    Well, he didn't tell me that.

7  Q    Okay.

8  A    If you said, What does she want? then he would

9  have said, She just wants to talk to you.  Because I

10 did hear him say that.  But I find it irrelevant to

11 the case.

12 Q    So you don't think it's relevant that an

13 incident of alleged violence is relevant to a case

14 where the crux of the case is whether or not I'm a

15 violent person?  You don't think that's relevant?

16 A    To the fact that you refused to talk to me is

17 irrelevant, or that dad said you did or didn't.

18 Q    For the offense that I was suspended for, the

19 talking about, if I don't -- without my medications,

20 there could be another Virginia Tech incident, do

21 you think I threatened anyone?

22            MR. VARADY:  Object to the form.

23 A    From what I remember being told, no, I do not

24 think you threatened anyone.  They must -- although,

25 apparently, they interpreted it that way.  Maybe

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                                    7/26/2012

Page 123

1    they didn't.  I don't know.

2    BY MR. STEBBINS:

3    Q    Now, that I've explained to you the relevance

4    of these incidents, let me try to go back to this

5    question again, hopefully to prevent a rescheduling

6    of the deposition at your expense.  Has your husband

7    ever engaged in any acts of violence of his own?

8    A    Yes.

9    Q    Was one of these incidents -- let me try going

10   in the incidents in chronological order.  One time

11   one of his coworkers called you -- accused you of

12   being sexually promiscuous and me and my sister

13   being illegitimate.  Instead of suing him for

14   defamation, your husband chose to attack that man

15   with a baseball bat?

16   A    He chased him.  He didn't attack him.

17   Q    With a baseball bat in hand, correct?

18   A    Yeah.

19   Q    Is it true that one time, when I was 12 years

20   old, you asked him to fix my video game adapter and

21   he, in reaction, literally slapped your glasses off

22   your face?

23            MR. VARADY:  Object to the form.

24   A    Irrelevant.

25   BY MR. STEBBINS:

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                        **7/26/2012**

Page 124

1    Q    I have already explained to you the relevance.

2    Would you please answer the question?

3    A    Your father's past actions are irrelevant to

4    the case.   Your decisions are your own.   Your

5    actions are your own decisions, and you do know the

6    difference.

7    Q    So you will stand by that, even at risk of this

8    deposition being scheduled at your expense?

9    A    It's irrelevant.   It will be irrelevant then.

10   Q    Did your husband previously throw my sister and

11   your daughter's head against a wall for wearing hair

12   dye?

13   A    It's irrelevant.   And no.   I'll tell you no.

14   It's irrelevant.

15   Q    In the month of May 2008, did your father [sic]

16   grab me by the neck and throw me against the wall

17   for yelling at him?

18                  MR. VARADY:   Object to the form.

19   A    I never saw it.

20   BY MR. STEBBINS:

21   Q    Do you -- have you heard -- do you know it

22   happened?

23   A    No, and irrelevant to the case.

24   Q    But your answer is that he has engaged in acts

25   of violence of his own, correct?

Page 125

1    A    Well, yes, he has.  He's not perfect.

2    Q    Illegal violence?

3    A    But his -- his actions are not what's on

4    question here.  His actions do not control your

5    actions.

6    Q    So let's assume that the University of

7    Arkansas' purpose for calling this deposition in the

8    first -- his deposition in the first place was to

9    try to get that Thanksgiving incident on the record

10   to try to prove their side, that I am a threat to

11   them.  Let's assume that that was their reason for

12   calling his deposition.  Would my innocence of that

13   incident subsequently hurt their claim?

14   A    I don't know.  I'm not a lawyer.

15   Q    In the event that it hurts their claim, would

16   you agree that his history of domestic battery would

17   hurt his case about me being guilty?

18                 MR. VARADY:  Object to the form.

19   A    I don't know.  I'm not a lawyer.

20   BY MR. STEBBINS:

21   Q    Mrs. Stebbins, for the sake of preventing this

22   deposition being rescheduled at your expense, that

23   is where I'm going with this.  So if you wish to

24   maintain your objections, they can be heard at a

25   later date, but please answer them.

Page 126

1              MR. VARADY:  Mr. Stebbins, I'm going

2          to object.  The witness is answering the

3          questions the best she can, and there's

4          no need to argue.

5    BY MR. STEBBINS:

6    Q    In the times in which I was allegedly engaged

7    in violence, would you agree that the expectation of

8    nonenforcement, the belief that I wouldn't be

9    punished for my actions probably contributed to my

10   decision to engage in them?

11             MR. VARADY:  Object to the form.

12   A    I don't know what you were thinking.  I can't

13   answer that.  I don't have an answer.

14   BY MR. STEBBINS:

15   Q    Do you agree that it is possible?

16   A    Well, it might be possible, but I have no way

17   of knowing.

18   Q    All right.

19   A    I can't believe I never taught you right from

20   wrong.

21   Q    You don't think you taught me right from wrong?

22   A    Apparently, I didn't.

23             MR. STEBBINS:  It's clear that I'm

24          not going to get anywhere with this

25          deposition unless she feels like

Page 127

1        answering, so I will call it here and ask

2        for a rescheduled deposition.

3            THE WITNESS:  I've answered.  It's

4        irrelevant.

5            MR. STEBBINS:  Irrelevant is not an

6        answer.  Yes or no, that's an answer.  So

7        I will call an end to this.

8            MR. VARADY:  Mr. Stebbins, this

9        isn't your deposition.  This is the

10       University's deposition.

11           MR. STEBBINS:  Well, I still intend

12       to ask the court to reschedule it at her

13       expense and order her to give straight

14       answers, whether she wants to or not.

15           MR. VARADY:  Well, I think that the

16       witness has tried to answer as best

17       should could.

18           MR. STEBBINS:  No, she hasn't.  She

19       has given no -- there are questions which

20       she has outright refused to give yes or

21       no answers to.

22           MR. VARADY:  Mr. Stebbins --

23           THE WITNESS:  Sometimes you don't

24       always have a yes or no answer.

25           MR. STEBBINS:  So it's not that you

Page 128

```
 1              just don't feel like a yes or no answer,

 2              you just don't have one to the incidents

 3              that he's engaged in?

 4                   THE WITNESS:  They're irrelevant.

 5              There is no reason to answer.

 6                   MR. STEBBINS:  We'll have to have

 7              the judge discuss that -- have the judge

 8              decide that.

 9                R E E X A M I N A T I O N

10   BY MR. VARADY:

11   Q    All right.  I just have one or two follow-up

12   redirect questions.

13   A    Okay.

14   Q    On cross-examination, David asked you some

15   questions about the time he was at the University of

16   Arkansas.  Do you recall that?

17   A    Uh-huh.

18   Q    That's a yes?

19   A    Yes.  I'm sorry.

20   Q    And I just want to establish.  You were in

21   Harrison during that period of time when he was

22   enrolled at the University in the fall of '08?

23   A    Yes.

24   Q    And you weren't present the day that the

25   Virginia Tech threat was made?
```

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                                    **7/26/2012**

Page 129

```
 1    A     Correct.

 2    Q     All right.

 3                MR. VARADY:  That's all I have.  You

 4          have the right to review your deposition

 5          if you wish to review it and make any

 6          corrections and submit those corrections

 7          to the court reporter.  You have 30 days

 8          to do that.  You do not have to do that.

 9                THE WITNESS:  Okay.

10                MR. VARADY:  And if you choose not

11          to do that, you can waive that

12          opportunity to review it and be done

13          today and just let it go.  So I leave it

14          to you.

15                THE WITNESS:  So you can get me a

16          copy of it and I can look it over?

17                MR. VARADY:  Yes.  The court

18          reporter would do that.

19                THE WITNESS:  Do that because, I

20          mean, you know, I may --

21                MR. STEBBINS:  Can she send me a

22          copy, or will I have to pay for it?

23                MR. VARADY:  We will provide you a

24          courtesy copy once the deposition is

25          finalized.
```

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                              **7/26/2012**

Page 130

1          THE WITNESS:  I mean, I may -- I

2     have a tendency -- like I told you

3     before, I can be three blocks down the

4     road and remember something, you know.

5          MR. STEBBINS:  But before it is

6     finalized, can I get a copy of the

7     prefinalized?

8          MR. VARADY:  No.

9          MR. STEBBINS:  Okay.

10          MR. VARADY:  Ms. Stebbins, you can

11     make corrections, but it's not intended

12     to go back and rewrite the testimony.

13          THE WITNESS:  Okay.  Well, I mean, I

14     don't feel like I -- I mean, I didn't lie

15     about anything.

16          MR. VARADY:  Right.

17          THE WITNESS:  I might have omitted

18     something that I will think about later

19     is what I'm asking about.  That is why I

20     would want to look it over.

21          MR. VARADY:  Okay.  Well, we'll have

22     it sent to you and you can look it over.

23          THE WITNESS:  Okay.  That's why I

24     would want to, to begin with, in case I

25     remember something.

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**RITA STEBBINS**                                              **7/26/2012**

Page 131

1        MR. VARADY:  Right.

2        THE WITNESS:  You know, or maybe I

3   forgot a little piece of information, and

4   sometimes that little piece can make a

5   difference.

6        MR. VARADY:  Right.  So we'll go

7   ahead and conclude at this point at

8   12:25.

9        THE WITNESS:  Okay.

10       MR. VARADY:  Thank you for coming in

11   today.  And I'm sorry you had to miss

12   work, and I appreciate your time.

13       (WHEREUPON, the proceedings

14   concluded in the matter at 12:25 p.m.)

15                *    *    *

16

17

18

19

20

21

22

23

24

25

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR

RITA STEBBINS                                                7/26/2012

Page 132

1                    C E R T I F I C A T E
2    STATE OF ARKANSAS      )
                            )  ss
3    COUNTY OF WASHINGTON )
4         I, JENNIFER L. WEBER, Certified Court Reporter,
     in and for the aforesaid county and state, do hereby
5    certify that the aforenamed witness was duly sworn
     by me prior to the taking of testimony as to the
6    truth of the matters attested to and contained
     therein; that the testimony of said witness was
7    taken by me in Stenomask and was thereafter reduced
     to typewritten form by me or under my direction and
8    supervision; that the foregoing transcript is a true
     and accurate record of the testimony given to the
9    best of my understanding and ability.
10        I further certify that I am neither counsel
     for, related to, nor employed by any of the parties
11   to the action in which this proceeding was taken;
     and, further, that I am not a relative or employee
12   of any attorney or counsel employed by the parties
     hereto, nor financially interested, or otherwise, in
13   the outcome of this action; and that I have no
     contract with the parties, attorneys, or persons
14   with an interest in the action that affects or has a
     substantial tendency to affect impartiality, that
15   requires me to relinquish control of an original
     deposition transcript or copies of the transcript
16   before it is certified and delivered to the
     custodial attorney, or that requires me to provide
17   any service not made available to all parties to the
     action.
18
          IN WITNESS WHEREOF, I have hereunto set my hand
19   and affixed my seal of office this 3rd day of
     August, 2012.
20
21
22   _____
     JENNIFER L. WEBER, CCR, LS #653
     In and for the County of Washington
23   State of Arkansas
24

     My Commission Expires
25   March 19, 2017

OFFICIAL SEAL
JENNIFER L. WEBER, CCR
ARKANSAS SUPREME COURT
CERTIFIED COURT REPORTER
LS NO. 653
NOTARY PUBLIC - WASHINGTON COUNTY, AR
My Commission Expires March 19, 2017
COMMISSION # 12360856

124 West Capitol Ave, Suite 1560, Little Rock, AR 72201
(501)801-1801 * Fax (501)801-1803

4241 Gabel Drive, Suite 3D, Fayetteville, AR 72704
(479)442-7111 * Fax (479)442-7222

Total Technology Litigation Support
"From File to Trial!"
LITTLE ROCK - FAYETTEVILLE
Online scheduling at
www.flynnlegal.com

FLYNN LEGAL SERVICES

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


DAVID STEBBINS                                    PLAINTIFF


vs.            CIVIL NO. 10-5125


UNIVERSITY OF ARKANSAS
OFFICE OF THE CHANCELLOR                           DEFENDANT

---

**ORAL DEPOSITION**

**OF**

**DAVID D. STEBBINS**


**(Taken July 26, 2012, at 12:33 p.m.)**

---

# COPY

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
DAVID D. STEBBINS                                                    7/26/2012

Page 23

1    guess, or you can attend online.  Were you aware

2    that he was attending Full Sail University?

3    A    I was not.

4    Q    And then he went to North Arkansas College here

5    in Harrison.  Were you aware of that?

6    A    I knew that.

7    Q    Were you aware of anything that occurred at

8    that institution regarding any threats?

9    A    No.

10                   MR. VARADY:  That's all I have, Mr.

11            Stebbins.

12                   I'll pass the witness.

13                   E X A M I N A T I O N

14   BY MR. STEBBINS:

15   Q    My first -- my first line of questioning is

16   going to be related to the Thanksgiving incident

17   since that was the first thing he talked to you

18   about.

19        Does the -- does the -- you mentioned a -- you

20   mentioned an agreement that I had to drop the

21   previous case against you.  Did that contract

22   entitle me to full Internet access when you weren't

23   using it?

24   A    It allowed for Internet access, yes.

25   Q    So you disagree that the word "full" was in

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
DAVID D. STEBBINS                                              7/26/2012

Page 24

1    there?

2              MR. VARADY:  Object.

3    A    I'm not going to disagree with that.

4    BY MR. STEBBINS:

5    Q    So it did entitle me to full Internet access?

6    A    You was getting full Internet access.

7    Q    Did the contract entitle me to it?

8              MR. VARADY:  Object.  Asked and

9              answered.

10   BY MR. STEBBINS:

11   Q    Was there any previous version of the contract

12   that we ultimately set aside in favor of the one we

13   actually signed?

14   A    Not that I can find.

15   Q    I would like you to take a look at the front

16   side, not the back ones where I've handwritten my

17   notes, but the front sides of this -- of these two

18   printouts.

19   A    (Reviews document.)

20             MR. VARADY:  Would you like to make

21             that an attachment to the deposition?

22             MR. STEBBINS:  I would, but I'm

23             wondering how are we going to scan it in

24             -- can we scan this and me keep it?

25             MR. VARADY:  Well, it would come

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
DAVID D. STEBBINS                                                    7/26/2012

Page 25

1            back as part of the deposition.

2                    MR. STEBBINS:  All right.  Do you

3            want to see this?

4                    MR. VARADY:  Sure.

5    BY MR. STEBBINS:

6    Q    Was that e-mail conversation between you and

7    me?

8    A    More than likely, yes.

9    Q    Does it document the negotiation history of the

10   contract?

11   A    Not really.

12   Q    So does it make reference to any contracts?

13   A    It references the exact same one because I

14   didn't change it.

15   Q    So you're saying that -- it -- that when --

16   okay.  Are you agreeing that you're the one who sent

17   the e-mail saying, "It's what I'm offering now, take

18   it or leave it"?  Do you agree to that?

19   A    On the one that you signed is the one that I

20   worked with.  That's the only one that even matters.

21   Q    But you're saying there were others?

22   A    I'm sure there was probably 15 different

23   versions that I've worked up in my head.

24   Q    Were there any that you exchanged with me?

25   A    None.  I didn't give you any.  I left one at

Page 26

1    the printer for you to sign.

2    Q    And that is the one that ended up being signed?

3    A    As far as I know.

4    Q    And that is the one that is the subject of our

5    current $11 million lawsuit?

6    A    Which is just a -- garbage.

7    Q    Is it specific to that suit?

8    A    Yes.

9    Q    Thank you.

10              MR. VARADY:  Do you want to make

11         this Exhibit D?

12              MR. STEBBINS:  Yes.  I might need it

13         for my notes, though, for the rest of the

14         deposition, then you can have it at the

15         end.

16   A    But what does that $11 million lawsuit have to

17   do with the U of A deposition?

18   BY MR. STEBBINS:

19   Q    I will -- that will be between us to decide.

20              THE WITNESS:  Well, I'm going to

21         request that he keep his questions to the

22         U of A deposition.

23   BY MR. STEBBINS:

24   Q    You -- all of these are directly connected.

25   A    No, they're not.  That $11 million lawsuit has

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR

**DAVID D. STEBBINS**                                                7/26/2012

Page 27

1    absolutely nothing to do with U of A.

2    Q    If you're not answering my questions simply

3    because you do not think they are -- well, I'll just

4    continue.

5              MR. VARADY:  Yeah.  Let's just move

6                   on.  I was going to say, Mr. Stebbins, I

7                   tried to give you some latitude on that,

8                   but I didn't ask any questions on direct

9                   examination about the contract.  I mean,

10                  I understand that you had an arrangement

11                  relative to staying at the house.

12   BY MR. STEBBINS:

13   Q    Does the contract in question give you the

14   right to revoke the Internet at any time?

15   A    Yeah.

16             MR. VARADY:  Mr. Stebbins, I'm going

17                  to object that I did not examine him on

18                  direct examination about a contract.

19             MR. STEBBINS:  It doesn't matter.

20             MR. VARADY:  It does matter.

21             MR. STEBBINS:  I know you don't see

22                  how it's immediately relevant, but it is.

23             MR. VARADY:  It's not whether it's

24                  relevant or not, Mr. Stebbins, but we are

25                  paying for the record here, and I'm not

Page 28

```
 1              going to have the record go on and on

 2              about a contract that I didn't ask one

 3              question about and is subject to a

 4              dispute in another case between you and

 5              your father.

 6   BY MR. STEBBINS:

 7   Q    Do you have any solid proof besides your word

 8   that I attacked you with a knife on Thanksgiving

 9   instead of you attacking yourself?

10   A    Well, I have a scar right across the top of my

11   forehead where you gashed it open.

12   Q    Do you have any solid proof --

13   A    I have a blurry right eye that will not clear

14   up now where you tried to gouge my eye out.

15   Q    Do you have any solid proof that I'm the one

16   who did it?

17              MR. VARADY:  I'm going to object,

18              Mr. Stebbins.  He's answering the

19              question and you're cutting him off.

20              He's telling you what would be proof of

21              an attack in response to your question of

22              that, and he's entitled to answer the

23              question.

24              MR. STEBBINS:  All right.

25              MR. VARADY:  Please let him answer
```

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**DAVID D. STEBBINS**                                    **7/26/2012**

Page 29

1           before you interrupt him.

2                You can answer.

3   A     No sane person is going to sit there and cut

4   themselves up with a kitchen knife.  No sane person

5   is going to try to gouge their own eye out.

6   BY MR. STEBBINS:

7   Q     Do you have any medical documentation that your

8   eye has been injured?

9   A     I don't have to have medical documentation.

10  Q     All right.

11  A     I can't see that light switch over there with

12  this eye.

13  Q     Then I will accept that as a no.

14        So you're saying no sane person would cut

15  themselves, correct?

16  A     Correct.

17  Q     So professional wrestlers are not sane people?

18  A     No, obviously not.

19  Q     What specifically did I say to your

20  grandchildren on Thanksgiving night?

21  A     I don't remember.  And it was during the day.

22  Q     In the Silver Dollar City incident where you

23  took me home and punched me, which of us instigated

24  the physicality?

25  A     You did.  You threatened to pull out a knife,

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**DAVID D. STEBBINS**                                              **7/26/2012**

Page 30

1    and you said you would take any punishment.

2    Q    So you believe that a threat is the equivalent

3    of physicality; is that correct?

4    A    You admitted to it, and you agreed that you

5    would take any punishment I saw fit.

6    Q    What was my exact wording when I said that?

7    A    I just gave you, Dad, I will take any

8    punishment you see fit.

9    Q    Huh.

10   A    Up until this point, punishment had been sent

11   to his room, his toys taken away because I didn't

12   raise him whipping him.  This time -- this is after

13   he had tried to stab my daughter, and he told my

14   wife at Silver Dollar City that that knife was going

15   to come out.

16   Q    Mr. Stebbins, I'm the one asking the questions

17   right now.

18              MR. VARADY:  He can finish his

19          answer.

20   A    Then I had to take that as a credible threat.

21   Wouldn't you?  So when we got home, I come around

22   and I hit him in the stomach and then popped him in

23   the nose, gave him a bloody nose, and let it stop

24   there.

25   BY MR. STEBBINS:

Page 31

1  Q    So you equate a threat of physicality to being

2  the same thing as physicality?

3              MR. VARADY:  Object.  Asked and

4              answered.

5  BY MR. STEBBINS:

6  Q    Did the cops see anyone wipe the knife clean

7  that night?

8  A    No.

9  Q    Okay.  When I had allegedly threatened to bring

10  the knife out in the Silver Dollar City incident,

11  how much time was it between the alleged instigation

12  of that threat and your physicality?

13  A    About an hour.

14  Q    About an hour.  So -- so the situation had

15  died -- had calmed down by that point?

16  A    Not at all.

17  Q    What do you mean?

18  A    Because you was steadily sitting in the

19  backseat fuming, talking underneath your breath.

20  Q    What was I saying?

21  A    I said you was talking underneath your breath,

22  which means people can't actually hear what you're

23  saying.

24  Q    So you don't even know if I was implying

25  revenge or not or if I was, like, saying a prayer of

Page 32

1    forgiveness to be forgiven of my sins or not.  You

2    don't know what I was saying.  I could have been

3    saying anything.

4              MR. VARADY:  Object to the form.

5              Mr. Stebbins, you're arguing with the

6              witness now.  If there's a question, ask

7              the question, please, but please don't

8              give an opinion or a statement on the

9              record.

10   BY MR. STEBBINS:

11   Q    You claim that you received no word that I had

12   previously dropped that previous lawsuit, correct?

13   A    Correct, outside of your word.

14   Q    Shouldn't the dropping of the lawsuit be on

15   public record?

16   A    Why was I not -- everything that you had done

17   up to that point, I had received a copy of when you

18   sent it in.  You say you dropped that lawsuit.  I

19   never was notified in writing.

20   Q    So I'm going to take that as a no, that you did

21   not actually go and check?

22   A    Again, this has absolutely nothing to do with

23   the lawsuit between you and the U of A.

24   Q    Well, is he the one who brought it up, the

25   dropping of the previous lawsuit?

**STEBBINS v. U OF A OFFICE OF THE CHANCELLOR**

**DAVID D. STEBBINS**                                                    **7/26/2012**

Page 33

1   A    That was in that contract, and he's already

2   admitted that's not part of this lawsuit.

3              MR. STEBBINS:  In that case, I have

4         no further questions other than to

5         petition the federal court for a

6         rescheduling jointly at his expense.

7              MR. VARADY:  I'm going to object to

8         that, Mr. Stebbins.  It's not your

9         deposition.  You didn't issue a subpoena

10        for it or cause one to be issued.

11             MR. STEBBINS:  Here is your answer.

12             MR. VARADY:  We'll make this Exhibit

13        D to the deposition.

14             (WHEREUPON, Exhibit D was marked for

15        identification and attached hereto.)

16             MR. STEBBINS:  Okay.  Do you wish to

17        redirect?

18             MR. VARADY:  Mr. Stebbins, you have

19        the right --

20             MR. STEBBINS:  Which Mr. Stebbins?

21             MR. VARADY:  This Mr. Stebbins, the

22        witness.

23             You have the right to review your

24        deposition and make any corrections, for

25        example, a misspelled name, if you choose

Page 34

1    to.  You don't have to do that.  If you

2    choose to do that, you have 30 days to

3    read, review it, and sign it.  If you

4    choose not to, you can just waive the

5    opportunity to do that and the deposition

6    is completed.  It's up to you.  Which

7    would you prefer to do?

8         THE WITNESS:  Would you be mailing

9    me a copy of it?

10        MR. VARADY:  The court reporter

11   would or we would, yes.

12        THE WITNESS:  Right.  Go ahead and

13   mail me a copy, and I'll read it over.

14   And then if you don't hear from me...

15        MR. VARADY:  Well, you'll have to

16   respond to the court reporter within that

17   30 days.

18        THE WITNESS:  Okay.  Well, I'll let

19   her know.

20        MR. VARADY:  Okay.  Thank you.

21        (WHEREUPON, the proceedings

22   concluded in the matter at 1:11 p.m.)

23              *    *    *

24

25

STEBBINS v. U OF A OFFICE OF THE CHANCELLOR
DAVID D. STEBBINS                                                7/26/2012

Page 35

1                C E R T I F I C A T E
2   STATE OF ARKANSAS      )
                           )  ss
3   COUNTY OF WASHINGTON )
4        I, JENNIFER L. WEBER, Certified Court Reporter,
    in and for the aforesaid county and state, do hereby
5   certify that the aforenamed witness was duly sworn
    by me prior to the taking of testimony as to the
6   truth of the matters attested to and contained
    therein; that the testimony of said witness was
7   taken by me in Stenomask and was thereafter reduced
    to typewritten form by me or under my direction and
8   supervision; that the foregoing transcript is a true
    and accurate record of the testimony given to the
9   best of my understanding and ability.
10       I further certify that I am neither counsel
    for, related to, nor employed by any of the parties
11  to the action in which this proceeding was taken;
    and, further, that I am not a relative or employee
12  of any attorney or counsel employed by the parties
    hereto, nor financially interested, or otherwise, in
13  the outcome of this action; and that I have no
    contract with the parties, attorneys, or persons
14  with an interest in the action that affects or has a
    substantial tendency to affect impartiality, that
15  requires me to relinquish control of an original
    deposition transcript or copies of the transcript
16  before it is certified and delivered to the
    custodial attorney, or that requires me to provide
17  any service not made available to all parties to the
    action.
18
         IN WITNESS WHEREOF, I have hereunto set my hand
19  and affixed my seal of office this 3rd day of
    August, 2012.
20
21
22  _____
    JENNIFER L. WEBER, CCR, LS #653
    In and for the County of Washington
23  State of Arkansas
24                                    OFFICIAL SEAL
                                      JENNIFER L. WEBER, CCR
    My Commission Expires             ARKANSAS SUPREME COURT
                                      CERTIFIED COURT REPORTER
                                      LS NO. 653
25  March 19, 2017                    NOTARY PUBLIC - WASHINGTON COUNTY, AR
                                      My Commission Expires March 19, 2017
                                      COMMISSION # 12359856



David Stebbins
5800 Law Dr.
Harrison, AR 72601

U.S. Dist
35 E. M
Room 51
Fayettevil