U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

SEP 18 2012

CHRIS R. JOHNSON, Clerk
By
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                                                      PLAINTIFF

vs.                            Civ. No. 10-5125

UNIVERSITY OF ARKANSAS                                   DEFENDANTS

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following brief in support of my motion for summary judgment.

### BACKGROUND

1. In the Fall of 2007, I was a student at the University of Arkansas. I have Asperger Syndrome, a mental disorder that impairs my ability to speak politely and tactfully. Sometimes, I can come across as rude or abrasive, perhaps even threatening, when I mean only to tell the truth. This disability was registered with the University of Arkansas' Center for Educational Access, or "CEA" for short.

2. The CEA, however, failed to provide the reasonable accommodations that I actually needed in order to thrive at the University of Arkansas. They justify their failure to do so because... I did not "request" these accommodations in advance of the need for the accommodation.

3. On December 5, 2007, I made some statements that the University of Arkansas perceived as a threat. They subsequently expelled me, an act with drove me to hysteria, including thoughts of suicide. A hearing was held in the month of January 2008 over these statements, by the "All-University Judicial Board," or AUJ for short. At this AUJ hearing, I requested the reasonable accommodations that I would need in order for me to study at the University without anyone feeling threatened. That reasonable accommodation was... patience and understanding.

4.      Although the University of Arkansas, at the time of the AUJ hearing, had no evidence whatsoever that (A) I was a legitimate danger to anyone, or (B) the reasonable accommodations of patience and understanding would create an undue hardship on anyone at the UA, they still proceeded to uphold the indefinite suspension (aka expulsion).  During the discovery, they attempted to *find* evidence to support their justifications, but they had no evidence of either of these justifications *at the time they actually expelled me.*

5.      Since being expelled from the UA, I attempted to find myself at North Arkansas College. Unlike the UA, however, they actually provided the reasonable accommodation of being patient and understanding with what I say unless I'm clearly *trying* to be rude or threatening.  This accommodation actually allowed me to avoid unnecessary disciplinary action, without anyone getting hurt.

## ARGUMENT

For the reasons set forth below, the above-mentioned background should entitle me to affirmative relief.

### Rehabilitation Act Applicability

To be bound by the Rehabilitation Act in the first place, they must receive federal financial assistance.  Otherwise, they are only bound by the Americans with Disabilities Act.

Fortunately, they do receive federal financial assistance.  See Undisputed Fact #3.

Moving on:

### A *prima facie* entitlement to relief is essentially admitted.

Defendants have admitted to virtually everything I need to create a *prima facie* case of disability discrimination:  I have Aspergers, and they did not provide the reasonable accommodations I needed.  They rely entirely on affirmative defenses.  Therefore, the bulk of my

argument will be quelling these defenses.

### The direct threat exception is proofless where it counts.

In their discovery, they *claim* that they had "every reason to suspect" that I would carry out my alleged threats, but they provided absolutely no actual *evidence* to support their claim. I do not have to prove that I am not a threat; they have to prove that I am. See EEOC v. Wal-Mart Stores, Inc., 477 F. 3d 561, 571 (8th Cir. 2007) ("[W]e now hold that the [Defendant] bears the burden of proof, as the direct threat defense is an affirmative defense.").

Defendants have attempted to find evidence that I am a danger to people by deposing my father, but their search for evidence is completely *ex post* to the expulsion which is the crux of this case. Whatever proof they collect, therefore, cannot possibly be the information that actually motivated the expulsion, and thus, is automatically pretextual. Remember, the explusion occurred in the months of December 2007 and January 2008. It was the UA's knowledge of facts at that time, and only their knowledge of facts at that time, which motivated their conduct, and thus, it is only their at-the-time knowledge upon which their case should stand or fall.

Therefore, because they had no evidence of direct threat or undue hardship at the time the expulsions actually happened, that means they have no evidence thereof at all. It was merely their baseless beliefs that motivated their conduct, and their baseless beliefs should be the conduct the Court adjudicates.

### Without reasonable accommodations, direct threat is irrelevant.

Defendants spent the entire discovery fixated on proving just one point: That I am a threat. They appear to believe that a direct threat relieves them of their obligation to provide reasonable accommodations. However, that is not how it works. In fact, the exact opposite is the case! A direct threat only exists in the first place if reasonable accommodations have been

exhausted, or if none can be provided at all.

See 42 U.S.C. 12111(3) ("The term direct threat means a significant risk to the health or safety of others **that cannot be eliminated by reasonable accommodation**." Bolded for emphasis). See also <u>Radecki v. Joura</u>, 114 F. 3d 115, 117 (8th Cir. 1997) ("If a reasonable accommodation could eliminate the risk, entities covered under [the statutes] are required to engage in such accommodation"). See also <u>School Bd. of Nassau Cty. v. Arline</u>, 480 US 273, 277 (1987) (affirming the decision of the Court of appeals to remand the case "for further findings as to... whether it was possible to make some reasonable accommodation for [the Plaintiff]").

The law is clear on this: No reasonable accommodation, no direct threat defense, and that's all there is to it.

In the instant case, Defendant admits to not providing specifically the accommodation I needed, even though in Exhibit G, you can clearly hear me requesting the accommodation multiple times throught the hearing. Therefore, the question is whether or not this accommodation would have eliminated the risk. Again, the burden falls onto Defendants to prove that there is no reasonable accommodation that could eliminate the risk, because Defendants hold the burden of proof on direct threat exception. See <u>EEOC</u>.

In the instant case, because Defendants were so fixated on their belief that showing a threat would instantly entitle them to otherwise unconditional victory, they didn't even *attempt* to prove that the accommodation I requested would have been insufficient, or that no accommodation – requested or not – would have been sufficient.

Conclusively, their direct threat defense should fail for lack of proof on all counts. Even when they tried to prove something, their evidence is scant and hardly fulfilling of their burden.

## I am not "legally responsible for requesting the accommodation."

In response to my first set of Interrogatories, Defendant made the following statement: "Plaintiff is legally responsible for requesting the accommodation." In making this statement, they clearly intend to place a unilateral burden entirely on me to somehow know the accommodations that will work and request them. Heck, that's part of my disability! Having Aspergers, I may not know the correct way to *phrase* an accommodations request!

Their belief about the law is, again, clearly wrong. I've been using employment discrimination case law -- using the doctrine of *in pari materia* -- this entire brief, so why not continue using it on this issue? That being said, please follow this link: please follow this link: http://eeoc.gov/facts/accommodation.html

In it, you will find the following information:

### Requesting Reasonable Accommodation

1. <u>How must an individual request a reasonable accommodation?</u>

    The individual must let the employer know that s/he needs an adjustment or change at work for a reason related to a medical condition. An individual may use "plain English" and need not mention the ADA or use the phrase "reasonable accommodation." Requests for reasonable accommodation do not need to be in writing, though an employer may choose to write a memorandum or letter confirming the request.

2. <u>What must an employer do after receiving a request for reasonable accommodation?</u>

    When the **disability and/or the need for accommodation is not obvious,** the employer may ask the individual for **reasonable documentation** about his/her disability and functional limitations.

    The employer and the individual with a disability should **engage in an informal process** to clarify what the individual needs and identify the appropriate reasonable accommodation. The employer may ask the individual questions that will enable it to make an informed decision about the request. This includes asking what type of reasonable accommodation is needed.

    There are extensive public and private resources to help employers and individuals with disabilities who are not familiar with possible accommodations. (See the Appendix to this guide for a resource directory to help identify reasonable accommodations.)

3. <u>Must an employer provide the reasonable accommodation that the individual wants?</u>

    **The employer may choose among reasonable accommodations as long as the chosen accommodation is effective (i.e., it removes the workplace barrier at issue).** The employer may offer alternative suggestions for reasonable accommodations to remove the workplace barrier in question. If there are two possible reasonable accommodations, and one costs more or is more difficult to provide, the employer may choose the one that is less expensive or easier to provide, as long as it is effective.

4. <u>How quickly must an employer respond to a request for reasonable accommodation?</u>

    An employer should respond promptly to a request for reasonable accommodation. If the employer and the individual with a disability need to engage in an interactive process, this too should proceed as quickly as possible. Similarly, the employer should act promptly to provide the reasonable accommodation.

So, as you can clearly see, it is the Defendants, not the Plaintiff, who must provide the accommodation. Defendants are allowed to discuss the issue with the Plaintiffs and find a reasonable accommodation that fits, but Plaintiff is not supposed to do all the work, like the Defendants suggest. The Defendants, by their own admission, did not even *try* to meet the me in the middle.

### There is no duty to exhaust administrative remedies.

In their response to my first batch of discovery requests, Defendants stated that I have "failed to exhaust [my] administrative remedies," and because of that, my "claim is barred as a matter of law."

Their assertions are just as plainly wrong as the rest of their beliefs about the law. There can be only two things they can possibly mean: Either I did not make any appeals within the University of Arkansas itself (the equivalent of filing an administrative appeal with a *federal* agency, as is usually required pursuant to 28 USC § 2675), or I did not attempt to go through the Office for Civil Rights within the United States Department of Education (the equivalent of filing a charge of employment discrimination with the EEOC, and obtaining a Notice of Right to Sue).

In response to their assertions, I researched some case law, looking up 8th Circuit cases using the keywords "discrimination" and "administrative remedies." All of the hits I got were concerned, not with trying to resolve the discrimination issue with the defendants before resorting to court action, but that the Plaintiff never obtained an EEOC Notice of Right to Sue, and the case was terminated for failure to do that.

There is simply no requirement for me to file with the Department of Education's Office for Civil Rights, the same way as there is a duty to file with the EEOC in an employment case. In fact, I actually *did* attempt to do so before I filed this lawsuit, thinking that there *was* a similar requirement, and the Office for Civil Rights in Dallas, TX told me that I didn't need to do that.

Furthermore, there is plainly no duty to exhaust intra-organization remedies with anyone other than a federal agency or administration, because the Statute does not call for it. The duty to exhaust administrative remedies with a federal agency exists because a statute - 28 USC § 2675 - specifically creates this requirement. Unless Defendant wants to claim themselves as a *federal* department, rather than a state one, then there is no duty to exhaust remedies with them unless we're in state court.

It's that simple.

### Relief Requested.

As you can see, Defendants are left without a single, solitary argument in defense of themselves. I have thoroughly crushed every argument that they have raised. The only question is... what kind of relief do I get? Obviously, I should be entitled to resume my studies at the University of Arkansas as soon as my felony charge is complete. But what else?

They should also have to furnish my transportation back to Fayetteville. This is because, but for their discrimination, I would already be in Fayetteville. This transportation will only be one way, but will amount to more than a simple taxi ride, such as what would be necessary to bring me to Fayetteville for a deposition or trial, because I will also be bringing my personal belongings with me, since I will not be returning to Harrison (hopefully ever).

Furthermore, notice Exhibit C, a document we have not even examined until now. It details the tuition, fees, and rates for both residence halls and meal plans, for the University of Arkansas, from the 2007-2008 academic year, all the way through the present. Because I have demonstrated that the Defendants had no right to expel me in the first place, part of my injunctive relief should be to have my tuition, fees, and rates reduced to match the rates I would have paid, but for Defendants' discrimination. This means that, for my first year back, I should receive the tuition, fees, and rates of the 2007-2008 academic year; for my second year back, I should receive the tuition, fees, and rates of the 2008-2009 academic year, and so on.

However, there is still more relief to be granted. Notice Exhibit E. The point of any lawsuit – not just a discrimination lawsuit – should be to make the plaintiff whole again, and to put him in the same economic position as he would have been, but for the violation. The best way for Defendants to do this is to, basically, push the reset button on my student loan debts. In other words, they should be ordered to pay off all my student loan debts, even those that became

zero-balance due to my 120+ day deficiency. They not only should pay off those debts, but repair my credit to the point that it would have been in had my education gone uninterrupted.

If, after doing all of that (reducing tuition to match what it should have been, paying off my debts, and repairing my credit), my credit is still insufficient to get either a PLUS loan, or a private student loan at interest at or below that of a PLUS loan, to pay for all the costs of education that my regular FAFSA financial aid package does not cover, then they should be ordered to provide me a PLUS loan of their own, directly out of their own treasury. This is because, but for the expulsion, I would not have suffered a loss of credit to the point where I cannot get any other loans to finance my education.

Additionally, I seek prospective injunctive relief. They must be ordered to permanently and perpetually cease and desist their discriminatory activities, including any activities that would not have occurred, but for their discrimination, even if they are not independently discriminatory. This will be sweeping relief; they cannot keep a close eye on me because of these incidents; they cannot increase any penalties beyond what they otherwise would have for any legitimate rule-breaking; they cannot even so much as *be scared of me* as I walk their campus and attend their classes. They must do so for as long as I am a student there, and for as long as I conduct any business, whatsoever, with them.

Last but not least, let's talk about damages. Although punitive damages are barred under both the ADA and Rehabilitation Act, compensatory damages can be awarded if the defendants act with either discriminatory intent or deliberate indifference. See *Meagley v. City of Little Rock*, 639 F. 3d 384 (8th Cir. 2011). Here, I repeatedly informed the Defendants of their obligation to accommodation my disability (see Undisputed Fact #7), and they simply did not care. This establishes deliberate indifference.

Because their actions drove me to large amounts of hysteria and depression (including, by their own admissions, thoughts of suicide), I believe a hundred thousand dollars in emotional distress and mental anguish would be well within the bounds of reason.  Of course, that's just my suggestion.  Go ahead and give me a million dollars if it the Court sees fit!  The relief I can get is only limited to the amount I ask for in the event of a default judgment.  See FRCP 54(c).

### Conclusion

Wherefore, premises considered, I respectfully request that the aforementioned relief be granted, that costs incurred be awarded, and that the Court award such other relief as it finds appropriate.

It is so requested this 17th day of August, 2012.

David Stebbins
123 W. Ridge St.,
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com

