U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

NOV 13 2012

CHRIS R. JOHNSON, CLERK

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

DAVID A. STEBBINS                                                      PLAINTIFF

vs.                                       Civ. No. 10-5125

UNIVERSITY OF ARKANSAS                                                 DEFENDANTS

## BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following brief in support of my motion for sanctions:

### Background

1. I am suing the University of Arkansas (Defendant) for a violation of the Rehabilitation Act. I have Asperger Syndrome, and Defendant made no attempt to accommodate the disability.

2. I am representing myself; Defendant is represented in this action by Thomas Scott Varady (Defense Counsel).

3. On November 7, 2012, Defense Counsel and I conferred over the phone in an attempt to find out which documents we mutually agree to the authenticity of, and which documents require authentication at trial.

4. We discussed – and mutually agreed to the authenticity of – the exhibits filed with my motion for summary judgment, including exhibit F. We also mutually agreed to the authenticity of the June 13, 2010 email that I sent to Chancellor Gearhart, the reaction to which triggered the continuing violations doctrine, allowing me to circumnavigate the statute of limitations in this case.

5. When discussing Defendant's bate-stamped documents, Defense Counsel emailed me a Table of Contents, which we read off of when discussing the bate-stamped documents. This table of contents is being enclosed as Exhibit B.

6. The discussion of the first four sections (Office of Admissions, Center for Educational Access, Financial Aid & Treasurer's Office, and University Housing) went off without a hitch. We mutually agreed to the authenticity of those documents.

7. Section 5, however, was when the crap hit the fan. When I expressed concerns that one of the documents listed in that section had been altered from its original draft ("original draft" being... the copy I received five years ago, when this all started), Defense Counsel got vehement and defensive. An explanation of the alleged forgery can be found in Exhibit A.

8. Defense Counsel subsequently refused to continue with the conference until I accepted the authenticity of this document. He threatened that, if I did not give into his demands, he would drag the case out, for weeks on end, by meticulously authenticating *every* document. ALL FOUR HUNDRED AND NINETY-FOUR PAGES! I tried to get him to discuss the potential authenticity of the rest of the documents, so hopefully, the documents I had alleged to be forged would be the *only* ones he would have to authenticate, reducing the trial length back down to only two days. However, that was not good enough for him; if I did not agree to the authenticity of *every* document, he would insist that the trial be dragged out, whatever the cost, by authenticating every single solitary document.

9. Knowing that the Court would find this sort of thing hard to believe, I decided to start *recording* his vehement response. A link to that recording has been provided in the motion that this brief supports. At precisely 13:00 in that recording, you can actually hear Varady admit point blank what his intentions were: He would not continue with the discussion, and hopefully reduce the length of the trial, until I started telling him what he wanted to hear. You heard it yourself; you do not *have* to "believe" me, anymore.

**Argument**

This Court has the authority to issue an appropriate sanction against a litigant if that litigant[1] engages in an act designed primarily to harass, or unnecessarily delay and increase the costs of the litigation. See FRCP 11(b)(1) and FRCP 11(c). Here, Defense Counsel threatened to do exactly that. We *could* have agreed to the authenticity of quite a few documents, especially if the first four sections of Exhibit B provided any indication. However, because he was butthurt at how I refused to acknowledge the authenticity of only a handful of documents, he insisted that we drag the case out for an eternity by meticulously authenticating every single document.

Even though there may not be a requirement that, on its face, compels him to confer with me on the authenticity, my complaint in this motion, like the discrimination that is the crux of this entire case, is not so much about what he is doing, but why he is doing it. He *was* conferring with me about the authenticity, but he threatened long and grueling trial expenses in an attempt to coerce me to do something I have the right to abstain from.

Even if he is not doing it for an improper purpose (which he is), the act *itself* is wrongful. Parties are not allowed to introduce evidence if it is a waste of time, or is offered to prove something that requires no proof. See Federal Rule of Evidence 403.

Therefore, sanctions are appropriate. Specifically, I request that the Defendant not be allowed to introduce any of the documents we did not discuss. He should only be allowed to introduce the documents mentioned in Paragraphs #4 and #6 in the "background" section of this brief. After that being established, the Defendants should only have to authenticate only those documents I refused to admit to the authenticity of. This should bring the trial back down to the regular two days we were expecting.

---

1  Or its counsel. See Comiskey v. JFTJ CORP., 989 F. 2d 1007, 1010 (8th Cir. 1993) ("It is a well-established principle that a party is responsible for the actions and conduct of his [or her] counsel.")

This sanction, despite being drastic, is consistent with FRCP 11(c)(4), because there is no other adequate relief that the Court can afford me, unless it is prepared to grant the Motion for Continuance that I am filing simultaneously with this motion. If the Court were to forbid the Defendant from authenticating these documents, it would effectively open the door for the Defendant to introduce completely falsified evidence. The prejudice I would suffer in that case is so obvious as to require no explanation. In fact, that so-called "sanction" more acts as a *reward* to the Defendant.

Compelling Defense Counsel to confer in good faith with me is also an inadequate remedy, since we are past the deadline to confer! By the time this motion gets filed, it will be *at least* October 12, 2012. The Final Scheduling Order demands that pretrial disclosures be completed by that date. See Section 4, Subsection (a) of that Order.

However, if this Court is willing to grant the simultaneous Motion for Continuance, then a variety of other reliefs are made available as well. For starters, the Court could compel Defense Counsel to confer in good faith with me. If the Continuance is granted, we would subsequently have enough time, before the pretrial disclosures become necessary, to actually comply with this compulsion.

Or, the Court could mandate that the Defendant pay my travel expenses for the extra length of the trial. This would require a hotel for every day of the trial except the first night (I previously had a hotel booked for Dec. 3, and only for that one night, because I expected to be able to go home on the afternoon of Dec. 4), and also to provide vehicle transportation to and from the Hotel, and also back to Harrison when it is all over (I had previously secured transportation to Fayetteville, but this person will not be able to stay for more than one night). Last but not least, they will have to furnish a food allowance for me. I will not be at home; I will

be able to eat groceries, so a restaurant will be my only means of dining.

They could take me to the UA cafeterias, and/or allow me to lodge on UA campus, and allow me to ride in the backseat with Varady to and from the Courthouse, if that would be more economical to them. However, cost reduction aside, my Motion for Continuance would still have to be granted, since, as said Motion explains, I have to be back in Harrison by Wednesday of that week.

## Conclusion

Whichever sanction the Court chooses, remember that I should not bear any of the consequences. I may have been the one to hang up the phone (as evidenced by the tail end of the recording), but it was only after Defense Counsel had made it abundantly clear to me that he would not continue to try to reduce the time and expense of the trial until I started telling him what he wanted me to hear. This is *his* fault, and thus, Defendant should bear one hundred percent of the consequences.

Wherefore, premises considered, I respectfully request that the Motion for Sanctions be granted.

*David Stebbins*
David Stebbins
123 W. Ridge St.
APT D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com