IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**DAVID STEBBINS**                                                                                    **PLAINTIFF**

**v.**                                         **Civil No. 10-5125**

**UNIVERSITY OF ARKANSAS**                                                    **DEFENDANT**

## DEFENDANT'S PRETRIAL DISCLOSURE SHEET

Defendant, University of Arkansas, acting by and through its undersigned counsel, submits this Pretrial Disclosure Sheet pursuant to Local Rule 26.2 and the Court's Civil Trial Scheduling Order.

    **1.**    **The identity of the parties submitting information.**

Defendant, University of Arkansas, acting through its undersigned counsel, submits this Pre-Trial Disclosure Sheet.

    **2.**    **The names, address, and telephone numbers of counsel for the party.**

Counsel for Defendant is as follows:

    T. Scott Varady, Associate General Counsel
    Arkansas Bar No. 93172
    William R. Kincaid, Associate General Counsel
    Arkansas Bar No. 93125
    Tamla J. Lewis, Associate General Counsel
    Arkansas Bar No. 2005237
    University of Arkansas
    Office of the General Counsel
    421 Administration Building
    Fayetteville, AR 72701
    (479) 575-5401 phone
    (479) 575-5046 facsimile

        and

    Jeffrey A. Bell, Senior Associate General Counsel

>Arkansas Bar No. 77009
>University of Arkansas
>Office of the General Counsel
>2404 North University Avenue
>Little Rock, AR   72207-3608
>(501) 686-2515
>(501) 686-2517

**3.　A brief summary of claims and relief sought.**

Based upon this Court's Order dated May 19, 2011, Plaintiff's sole claim in this case is an alleged violation of Section 504 of the Rehabilitation Act.　Specifically, Plaintiff sent a threatening and profanity-filled email to Chancellor G. David Gearhart dated June 13, 2010, demanding that the University lift Plaintiff's suspension and allow him "to re-admit [him]self . . . on the spot, no applications, no fucking interviews, no jack shit."　In response, the University assembled a threat assessment team, and the University of Arkansas Police Department issued a criminal trespass warning to Plaintiff that prohibited him from being on campus without a police escort for a period of one year.　The University did not allow Plaintiff to re-enroll because Plaintiff had not completed the sanctions imposed by the All-University Judicial Board on January 10, 2008, including, without limitation, the fact that Plaintiff had terminated his counseling services, had not completed his counseling treatment, and continued to be a threat to the University community according to Plaintiff's counselor.　At present, Plaintiff's status at the University continues to be a student who is on suspension and must complete his student judicial sanctions before he may return to the University.

In his Amended Complaint, Plaintiff seeks the following relief:

- Injunctive relief "to expunge all records" relating to his "suspension";

- The difference between tuition at the University of Arkansas and Full Sail

University in the amount of $22,282.40.

In his discovery responses, Plaintiff claims the following damages:

- "[I]njunctive relief" ordering the University to pay off Plaintiff's student loan debt (including debt incurred at other educational institutions) in the amount of at least $50,000; and

- Injunctive relief ordering Plaintiff's reinstatement at the University at the "same tuition" Plaintiff "would have received" if he "had not been suspended in the first place."

Plaintiff's discovery responses incorporated his initial disclosures by reference. In his initial disclosures, Plaintiff sought the following relief:

- Injunctive relief lifting his suspension and allowing Plaintiff to return to school when he desires;

- Monetary damages in the amount of $50,000 for his student loan debt (including amounts Plaintiff incurred at other schools and in other programs); and

- Punitive damages in the amount of $500,000 (Defendant notes that Plaintiff may not obtain punitive damages pursuant to 42 U.S.C. § 1981a(b)(1)).

Defendant states that, as a matter of fact and law, Plaintiff is not entitled to any damages, including, without limitation, monetary relief or injunctive relief.

### 4. Prospects for settlement.

The parties were unable to resolve this case at the settlement conference ordered by the Court. Defendant does not believe there is any real prospect for settling this case.

**5.     The basis for jurisdiction or objections to jurisdiction.**

Plaintiff's Amended Complaint fails to state any statutes governing jurisdiction and venue for this case.   Although Defendant does not dispute the Court's jurisdiction over Plaintiff's Rehabilitation Act claim, Defendant denies that there is any merit to this lawsuit. The Court dismissed separate Defendant G. David Gearhart from this lawsuit, and he is no longer a party to this action.   Accordingly, the Court lacks any jurisdiction over him.

**6.     A list of pending motions.**

At the present time, Defendant states that the following motions are pending:

(A)     Plaintiff's Motion for Summary Judgment;

(B)     Plaintiff's Motion in Limine; and

(C)     Plaintiff's Motion for Sanctions.

**7.     A concise summary of the facts.**

Plaintiff enrolled as an undergraduate student at the University of Arkansas, Fayetteville, for the fall, 2007 semester.    On December 3, 2007, Monica Holland, then Director of the Office of Community Standards and Student Ethics ("OCSSE"), met with Plaintiff to discuss his inappropriate conduct at the Treasurer's Office and at his residence hall.    During the course of that meeting, Plaintiff detailed a plan to kill his father by cutting up his head, to write a "letter of forgiveness" with his father's blood, to videotape the attack, and to post it on the Internet site known as "You Tube."    On December 5, 2007, Plaintiff missed an appointment to get his medications refilled at the Pat Walker Health Center and became very upset.    Consequently, Plaintiff made repeated threats to commit another "Virginia Tech incident" at the University to Sue Theiss, then UA Ombuds, unless he received attention immediately.

Ms. Theiss reported Plaintiff's repeated "Virginia Tech" threats to Dr. Holland who then

contacted Plaintiff. On December 5, 2007, Dr. Holland issued an interim suspension to Plaintiff based upon the following: (1) Plaintiff's repeated threats to commit another "Virginia Tech" incident (including directly to Dr. Holland); (2) Plaintiff's threat to kill his father; (3) Plaintiff's repeated threats to commit suicide if he was suspended; and (4) Plaintiff's threats to attack Lt. Vance Rice of UAPD that evening. Plaintiff eventually agreed to be admitted to a local hospital overnight, and then his mother took him to an in-patient mental health facility in Ft. Smith, Arkansas, the following day.

On January 10, 2008, the All-University Judicial Board ("AUJ") conducted a hearing on Plaintiff's alleged violations of the Student Code of Conduct and found Plaintiff responsible for multiple violations. In its decision, the AUJ *suspended* Plaintiff for the spring, 2008 semester and further determined that Plaintiff could return to campus for the fall, 2008 semester subject to certain conditions. Plaintiff did not exercise his rights to appeal the AUJ's decision, and it became final.

On May 5, 2008, Dr. Holland spoke to Ms. Carla Brown, Licensed Clinical Social Worker for Ozark Guidance Center, who provided counseling services to Plaintiff from February to April, 2008. Among other information, Ms. Brown, in her professional opinion, told Dr. Holland that Plaintiff, who had terminated his treatment to move home to Harrison, Arkansas, continued to present a threat to the University community and should not be permitted to re-enroll at that time. On April 2, 2008, Plaintiff emailed Dr. Holland and informed her that he was pursuing other opportunities and not returning to the University.

In a series of emails beginning on December 9, 2009, through the spring, 2010 semester, Plaintiff wrote Dr. Holland requesting approval to return to the University. Dr. Holland explained to Plaintiff that he was first required to complete the AUJ's sanctions in order to lift

his suspension and to re-enroll at the University. Dissatisfied with Dr. Holland's responses, Plaintiff eventually sent a threatening and profanity-filled email to Chancellor G. David Gearhart on June 13, 2010. The salutation of the email stated, "Listen up you fucking maggot" and demanded, within a matter of 16 hours, that the Chancellor remove Plaintiff's suspension, override of any of Plaintiff's debts to the University, and readmit Plaintiff to the University, in Plaintiff's words "on the spot, no applications, no fucking interviews, no jack shit."

In response to Plaintiff's email, the University assembled a threat assessment team of campus professionals to assess the email and determine the best possible course of action. As a result of that process, Lt. Vance Rice of UAPD contacted Plaintiff by phone and email on June 15, 2010. Lt. Rice advised Plaintiff that his behavior and June 13, 2010, email were "unacceptable" and instructed Plaintiff not to make direct contact with the University's administration. Additionally, Lt. Rice informed Plaintiff that a criminal no trespass warning was being issued to Plaintiff for a period of one year and that, if Plaintiff had any business on campus during that time period, Plaintiff should coordinate any campus visit with UAPD.

Following Lt. Rice's email, Plaintiff began sending a series of emails to University counsel in an effort to create an employment discrimination claim and to demand arbitration over the Internet. After the University steadfastly declined to engage in arbitration, Plaintiff ultimately filed this lawsuit. As characterized by this Court's Order on Defendant's Motion to Dismiss on May 19, 2011, the sole surviving claim is Plaintiff's assertion of disability discrimination under Section 504 of the Rehabilitation Act because the University allegedly failed "in 2010 to allow [Plaintiff] to re-enroll as a student after he was banned from campus in 2007. Stebbins contends that he has Asperger Syndrome, and that UA made no attempt to accommodate this disability."

Plaintiff contends that the University violated his right under Section 504 of the Rehabilitation Act by failing to provide "accommodations" for his Asperger Syndrome disability. Specifically, Plaintiff argues that the AUJ should have excused Plaintiff's threats of violence of committing another "Virginia Tech" due to his disability. Plaintiff, however, did not make his "accommodation request" until after-the-fact at his AUJ hearing. The University's position is that the institution is entitled to hold Plaintiff responsible for his conduct and actions. Further, Plaintiff did not appeal his suspension and never appealed any alleged denial of any accommodations through the University's ADA/Section 504 Grievance procedures. As such, Plaintiff failed to exhaust his administrative remedies.

Consistent with his articulated plan to injure his father in 2007, Plaintiff attacked his father with a knife on Thanksgiving Day in 2011 and was subsequently charged with felony battery for his criminal actions in Boone County. According to the deposition testimony of Plaintiff's father, Plaintiff attacked his father because Plaintiff was upset that the Internet service at their home was too slow. During discovery, Plaintiff's history of violence became known, including, among other things, Plaintiff choking his mother and attempting to attack his sister with a knife.

At the present time, Plaintiff remains suspended, but he has not been expelled from the University. Plaintiff must complete the sanctions imposed by the AUJ as part of his suspension and not present a danger to the University community of students, faculty and staff in order to return to campus. Plaintiff has failed to do so at this time. The University expects to prove all of these facts at trial.

### 8. All proposed stipulations.

Defendant is prepared to stipulate to the facts set forth in the Summary of Facts set forth

above in Paragraph 7, which are incorporated into this Paragraph 8 by reference.

### 9. The issues of fact expected to be contested.

At trial, Defendant expects Plaintiff to contest all facts set forth in Paragraph 7. Plaintiff denies that he ever threatened anyone when he stated that there could be another "Virginia Tech" incident multiple times on December 5, 2007. Plaintiff denies that he ever expressed a plan to kill his father by cutting up his face. Plaintiff asserts that he wanted his father to consent to being cut up. Plaintiff denies that he took any actions that made him a direct threat to the University community or that he has a diagnosis of Intermittent Explosive Disorder that makes him violent and explosive. Plaintiff denies that he previously engaged in violence against his family members, including, without limitation, choking his mother, attempting to attack his sister with a knife or attempting to kill his father on Thanksgiving Day, 2011.

The University denies that it failed to accommodate Plaintiff, that Plaintiff ever asked for reasonable accommodations in a timely manner, that Plaintiff's requested accommodation was "reasonable" (i.e., ignore threats of mass murder and violence) or reasonably specific, and that Plaintiff exhausted his administrative remedies for any alleged denial of reasonable accommodations. Furthermore, the University contends that Plaintiff presented a direct threat to the University community and was thus not "otherwise qualified" under the Rehabilitation Act. The University denies that any facts support any request for relief or damages by Plaintiff.

**10.    The issues of law expected to be contested, with appropriate citations to legal authority.**

At trial, Defendant anticipates that Plaintiff will contest the following issues of law:

- Whether Defendant violated Section 504 of the Rehabilitation Act when the University declined Plaintiff's June 13, 2010, threat and demand to lift his suspension because Plaintiff had not yet completed his judicial sanctions (including, without limitation, counseling) for repeatedly threatening on December 5, 2007 to commit another "Virginia Tech incident," for threatening to kill his father on December 3, 2007, for threatening to commit suicide, and for threatening to attack Lt. Vance Rice of UAPD on December 5, 2007.  *Mershon v. St. Louis Univ.,* 442 F.3d 1069, 1073 & 1077 (8th Cir. 2006) (granting summary judgment in favor of a university that prevented a student from entering its campus after the student stated "my professor makes me so mad that I want to put a bullet in his head"); *Ascani v. Hofstra Univ.*, 173 F.3d 843 (2d Cir. 1999) (holding that a university did not violate Section 504 after expelling a student because she had threatened her professor and posed a "direct threat" and thus, was not "otherwise qualified" under Section 504); *See* 42 U.S.C. § 12113(b) (Section of ADA stating, "the term 'qualification standards' may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace."); *Palmer v. Circuit Court of Cook County*, 117 F.3d 351 (7th Cir. 1997) (holding that a disabled employee who threatened a co-worker was not "qualified" under the ADA); *Perkins v. St. Louis County Water Co.,* 160 F.3d 446, 448 (8th Cir. 1998) (holding that legal interpretations of the ADA apply to claims under the Rehabilitation Act).

- Whether Plaintiff requested a reasonable accommodation in a timely manner or after the fact, and whether Plaintiff can show that the reasonable accommodation is specifically related to his disability.  *Peebles v. Potter*, 354 F.3d 761, 767-68 (8th Cir. 2004); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027-29 (8th Cir. 1999); *Stern v. Univ. Osteopathic Med. & Health Sci.'s*, 220 F.3d 906, 908 (8th Cir. 2000).

- Whether Plaintiff can establish a prima facie case under the Rehabilitation Act when he was not "otherwise qualified" because he presented a significant health and safety risk to the University community and was a "direct threat" based upon his repeated threats to commit another "Virginia Tech" incident, to cut up his father's face, to commit suicide, and to attack Lt. Vance Rice.  *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 (1987); *Bragdon v. Abbott*, 524 U.S. 624, 648-49 (1998); *Mershon v. St. Louis Univ.,* 442 F.3d 1077 (8th Cir. 2006).

- Whether Plaintiff's requested accommodation constituted a fundamental alteration or an undue burden on Defendant.  *Peebles v. Potter*, 354 F.3d 761,

767 (8th Cir. 2004); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027-28 (8th Cir. 1999).

- Whether the University possessed legitimate, non-discriminatory reasons for issuing an interim suspension to Plaintiff on December 5, 2007, upholding the interim suspension by suspending Plaintiff for the spring, 2008 semester, and declining Plaintiff's demand to re-enroll at the institution in June, 2010.

- Whether Plaintiff's requested accommodation is "reasonable" under the Rehabilitation Act.  *Mershon v. St. Louis Univ.,* 442 F.3d 1069, 1073 & 1077 (8th Cir. 2006).

- Whether Plaintiff exhausted his administrative remedies when he failed to follow the University's ADA/Section 504 Grievance Procedure and file a grievance over the alleged denial for any accommodations he sought.

**11.    A list and brief description of exhibits, documents, charts, graphs, models, schematic diagrams, summaries, and similar objects which may be used in opening statement, closing argument, or any other part of the trial, other than solely for impeachment purposes, whether or not they will be offered in evidence.   Separately designate those documents and exhibits which the party expects to offer and those which the party may offer.**

Defendant submits the following list and brief description of the exhibits it expects to use at the trial of this matter.   In most instances, each of the University offices identified below possessed a file concerning Plaintiff and those records were produced to Plaintiff during discovery.   If desired by the Court, Defendant can list each exhibit individually.   For the convenience of the Court, Defendant includes the Bates-stamp numbers for each file as appropriate.

1. Office of Admissions                            000001 - 000037

2. Center for Educational Access*              000038 - 000096

3. Financial Aid & Treasurer's Office          000097 - 000150

4. University Housing*                             000151 - 000154

5. Office of Community Standards &           000155 - 000296

      Student Ethics*

6.   UA 504/ADA Grievance Procedure*         000297 - 000307
     and EEOC Notices

7.   Pat Walker Health Center                  000308 - 000370

8.   Registrar's Office                        000375 - 000378

9.   Student Affairs                           000379 - 000382

10.  UAPD*                                   000383 - 000387

11.  Walton College of Business            000388 - 000393

12.  Student Tuition and Fees              000394 - 000405

13.  University Housing* (Zero Balance Statement)   000406

14.  Records of Ozark Guidance/Carla Brown*   000408 - 000444

15.  Records of Plaintiff's Cases & Criminal Charges*  000407, 000445 – 000494

16.  2007-2008 Student Handbook and Code of Student Life*

17.  Disc of Audio Recording of the Plaintiff's January 10, 2008 Judicial Hearing*

18.  Ex Parte Order of Protection filed by David D. Stebbins (Sept. 28, 2012)*

Defendant plans to introduce some or all of the records contained in each of the files or exhibits marked with an asterisk (*). Defendant *may* introduce records or items from all of the other files listed above as well as all attachments to any pleadings filed or served by either party in this case. Additionally, Defendant may introduce any record produced by Plaintiff in this case and any affidavits or pleadings served or filed by either party. Additionally, Defendant may introduce portions or the entire transcripts of the Depositions of Rita Stebbins, David D. Stebbins, Carla Brown and David A. Stebbins.

    **12.**     **The names, addresses and telephone numbers of witnesses for the party.**

    **Separately identify witnesses whom the party expects to present and those whom the party may call.   Designate witnesses whose testimony is expected to be presented via deposition and, if not taken stenographically, a transcript of the pertinent portion of the deposition testimony.**

 Defendant *plans* to call the following witnesses:

1. Sue Theiss
  University Ombuds Office
  Waldo 113 & 116A
  Oregon State University
  Corvallis, OR   97331
  541-737-7028

2. Annie Jannarone
  Director, Center for Educational Access
  104 ARKU
  University of Arkansas
  Fayetteville, AR   72701
  479-575-2695

3. Dr. Monica Holland
  Director, Office of Academic Integrity and Student Conduct
  ARKU 634
  University of Arkansas
  Fayetteville, AR   72701
  479-575-5170

4. Carla Brown, LCSW
  Ozark Guidance Center
  2400 South 48th Street
  Springdale, AR   72762
  479-750-2020

5. Lt. Vance Rice
  UAPD
  155 S. Razorback Rd.
  Fayetteville, AR   72701
  479-575-2222

6. JoAnn Pepper
  Director of Student Accounts
  Treasurer's Office
  ARKU 213
  Fayetteville, AR   72701

       479-575-5651

7. David D. Stebbins
   8527 Hopewell Rd.
   Harrison, AR   72601
   870-743-4386

8. David A. Stebbins
   123 West Ridge St., Apt. D
   Harrison, AR   72601
   870-204-6516

9. Florence Johnson
   Executive Director, University Housing
   1 University of Arkansas
   Fayetteville, AR   72701
   479-575-8450

10. Dr. Jeanne McLachlin
    Department of Biological Sciences
    SCEN 625
    University of Arkansas
    Fayetteville, AR   72701
    479-575-5348

Defendant *may* call any of the following witnesses or any individuals identified in Defendant's or Plaintiff's Initial Disclosures:

1. Dr. Jonathon Perry
   Director, Counseling and Psychological Services
   Pat Walker Health Center
   University of Arkansas
   Fayetteville, AR 72701
   479-575-2000

2. Debbie Hudson
   Administrative Specialist
   University Housing
   1 University of Arkansas
   Fayetteville, AR   72701
   479-718-3302

3. Dr. Gwen Gresham
   Vice President of Learning
   North Arkansas College

13

    1515 Pioneer Dr.
    Harrison, AR 72601
    870-743-3000

 4. Judy Schwab
    Associate Vice Chancellor for Administration
    Office of the Chancellor
    425 Administration Building
    Fayetteville, AR 72701
    479-575-4149

Additionally, the University may call individuals identified in the institution's initial disclosures as rebuttal witnesses.

**13. The current status of discovery, a precise statement of the remaining discovery and an estimate of the time required to complete discovery.**

At this time, the parties have completed discovery.

**14. An estimate of the length of trial and suggestions for expediting disposition of the action.**

Defendant believes that the trial will last two to three days.

            Respectfully Submitted,


            By: /s/ T. Scott Varady
            T. SCOTT VARADY
            Arkansas Bar No. 93172
            Associate General Counsel
            WILLIAM R. KINCAID
            Arkansas Bar No. 93125
            TAMLA J. LEWIS
            Arkansas Bar No. 2005237
            421 Administration Building
            University of Arkansas
            Fayetteville AR 72701
            (479) 575-5401

            AND

JEFFREY A. BELL
Arkansas Bar No. 77009
Senior Associate General Counsel
University of Arkansas
2404 North University Ave.
Little Rock AR 72207-3608
(501) 686-2500

COUNSEL FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

    I, T. Scott Varady, Associate General Counsel, do hereby certify that I caused a copy of the foregoing Defendant's Pretrial Disclosure Statement to be served on David Stebbins, 123 West Ridge St., Apt. D, Harrison, Arkansas, 72601, on this 13th day of November, 2012.


                                            /s/ T. SCOTT VARADY
                                            Associate General Counsel